UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: Nissan North America, Inc. Litigation | Case No.: 3:19-cv-00843<br><br>District Judge William L. Campbell, Jr.<br>Magistrate Judge Jeffrey S. Frensley |

**PLAINTIFFS' DISCOVERY DISPUTE STATEMENT**

Plaintiffs hereby submit this Discovery Dispute Statement pursuant to the Court's Initial Case Management Order (ECF No. 118) and instructions from Magistrate Judge Frensley's chambers via a May 6, 2020 email. The Parties exchanged written correspondence and engaged in multiple telephonic meet-and-confer sessions over the last several months. Accordingly, Plaintiffs hereby certify that they made good faith efforts to resolve the dispute as set forth below.[1]

**I.      Introduction and Procedural Background**

The parties have a threshold discovery dispute that pertains to most of Plaintiffs' discovery requests and will impact the scope of the case moving forward. Resolution of this matter now will resolve a number of potential disputes that are currently being discussed and likely avoid others as the case proceeds. As explained more fully below, this case involves a wide array of Nissan and Infiniti cars with defective braking systems. Nissan will only provide information regarding the specific model year for cars that the named Plaintiffs own, apart from some limited information that is already publicly available. Plaintiffs anticipate filing an amended complaint that will moot Defendants' arguments with a number of models but will not fully resolve the issue. Thus, Plaintiffs

---

[1] Due to current concerns regarding the COVID-19 virus, the Parties agreed to waive the in-person meeting requirement set forth in the Initial Case Management Order (ECF No. 118, at 6).

ask the Court for an order compelling Defendants to produce requested documents and information pertaining to all vehicles at issue in this case, and not just vehicles owned by the named Plaintiffs.

This case involves a defect in the automatic emergency braking systems in Nissan vehicles (called "AEB" or "FEB" systems). The defect causes the Class Vehicles to abruptly slow down or stop when they detect non-existent obstacles, and also causes the FEB system to deactivate itself, rendering the feature inoperable. *See* Consolidated Class Action Complaint, ¶ 2 ("Complaint"). Relevant to this dispute, the Complaint defines the "Class Vehicles" at issue in this case as "2015 or newer Nissan or Infiniti vehicle equipped with Forward Emergency Braking or Automatic Emergency Braking system (collectively, the "FEB system"), including but not limited to the Nissan Rogue, Nissan Rogue Sport, Nissan Murano, Nissan Altima, Nissan Maxima, Nissan Armada, Nissan Pathfinder, Nissan Leaf, Nissan Sentra, Infiniti QX30, Infiniti Q50, Infiniti Q60, Infiniti Q70, and Infiniti QX80, (the "Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and/or leased by Nissan." *Id.* at Introductory Paragraph. The Complaint also includes a lengthy section of quotes from consumers complaining about the defect in many of the listed Class Vehicles, not just those owned by the named Plaintiffs. *Id.* at pp. 19-26. As explained more fully in Section I(B)(2) below, only a few radar systems were used in all of the Class Vehicles' FEB systems.

The ten currently named Plaintiffs own either a 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, or 2018 Nissan Murano. Other clients who own other cars, and who wish to be added to the Complaint, have retained Plaintiffs' counsel. We are currently preparing an amended complaint, which we anticipate will add plaintiffs who own a 2018 Sentra, 2018 Sentra SV, 2017 Rogue SV, 2019 Pathfinder, 2017 Murano, 2016 Altima, and 2018 Maxima.

Last year, Plaintiffs served written discovery requests on Nissan North America, Inc. ("NNA") and its parent company Nissan Motor Co., Ltd. ("NMC"). On June 17, 2019, NNA served

2

objections stating that it would only agree to discovery pertaining to the same model year as cars owned by the named Plaintiffs. NMC served similar objections on September 30, 2019.

In addition, Plaintiffs recently served a subpoena on Robert Bosch, LLC ("Bosch"), one of two manufacturers of the radar sensors used in the FEB systems. Bosch's counsel informed us that Bosch is following Defendants' lead in refusing to produce documents pertaining to any cars not owned by the named Plaintiffs, despite the fact that the same system was installed in many other Class Vehicles. Bosch has represented it will voluntarily produce documents pertaining to other cars only if this Court requires Defendants to do the same.

There have been frequent and lengthy efforts to meet and confer by phone, letter and email, but little progress has been made. To date, Defendants have only agreed to produce Technical Service Bulletins ("TSB's") and a chart showing which radar sensors are installed in each vehicle, both of which are publicly available information. At this time, Defendants have produced approximately 1,200 documents, and only a small handful of emails, which is a small production in a large, complex class action such as this.

**II.      Argument**

    **A.      All Class Vehicles Are Relevant**

Defendants have no legal basis to limit discovery to cars owned by the named Plaintiffs because all Class Vehicles are at issue in the Complaint, and even if they were not, they would *still* be relevant. First, the Sixth Circuit holds that "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.'" *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "Rule 26 does not limit discovery to issues raised in the pleadings, but those relevant to the pleadings." *Am. Air Filter Co. v. Universal Air Prod., L.L.C.*, 2015 WL 3862529, at *1 (W.D. Ky. June 22, 2015). As a result, courts generally permit "discovery of similar, if not identical,

3

[product] models" - particularly in the context of product defect cases. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *Bradley v. Cooper Tire & Rubber Co.*, 2006 WL 3360926, at *2 (S.D. Miss. Nov. 20, 2006) (noting that where "claims [a]re based both upon design and manufacturing defects, … discovery should not be limited to tires with the same green tire specification limits as the subject tires").

The discovery sought here is directly relevant to the pleadings because the Complaint specifically defines the "Class Vehicles" and alleges common defects among those vehicles. If there were a legal basis to hold that, as a matter of law, Class Vehicles not owned by the named Plaintiffs were irrelevant and beyond the scope of this case, then it was incumbent on Defendants to make those arguments in a motion to dismiss or strike the pleadings. They did not do that.

Second, Defendants cannot justify their position by trying to shift the burden on Plaintiffs to prove, at this stage of the proceedings, that the defect is present or substantially similar in all Class Vehicles. "The rules cannot be read as imposing a 'Catch-22' that would require proof of similarity before a party may discover evidence of similarity." *Albee v. Continental Tire N. Am., Inc.*, 2010 WL 1729092, at *7 (E.D. Cal. Apr. 27, 2010); *see also Hennigan v. Gen. Elec. Co.*, 2010 WL 4189033, at *5 (E.D. Mich. Aug. 3, 2010), *adopted*, 2010 WL 4179376 (E.D. Mich. Oct. 20, 2010) ("It would be difficult, if not impossible, for a plaintiff to make a showing that other incidents are substantially similar, if they are precluded from discovery of that information in the first place."). In any event, the standard for substantial similarity is low. "[S]ubstantial similarity means that the [defects] occurred under similar circumstances or share the same cause." *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007) (same). "The Sixth Circuit has further held that [t]he substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties. The rule requires

4

substantial similarity among the variables relevant to the plaintiffs' theory of the case." *Steede v. Gen. Motors, LLC*, 2013 WL 142484, at *9 (W.D. Tenn. Jan. 11, 2013) (internal quotation omitted).

Third, even if the FEB systems in other Class Vehicles are different and do not share the same defect, information about them would still be relevant. For instance, NNA's Interrogatory No. 17 asks Plaintiffs to identify "any alternative design You contend would have corrected or ameliorated the alleged flaw." Comparing information about defective and purportedly non-defective FEB systems would likely shed light on the cause(s) of the defect and Nissan's ability to correct the defect, and would be relevant to responding to NNA's Interrogatory No. 17. Further, if it is true that the FEB defect is limited to certain vehicles, then discovery may reveal that Nissan installed what it believed to be more reliable sensors in its more expensive cars, which in turn would be relevant to proving Nissan's knowledge and/or supporting punitive damages. Either way, information on all Class Vehicles is relevant and discoverable here.

**B.    Evidence Obtained to Date Supports the Relevance of Discovery on All Class Vehicles Identified in the Complaint**

Defendants' position that the Court should take their word that the defect is limited to cars owned by the named Plaintiffs is contrary to publicly available information. First, as noted above, the Complaint contains numerous quotes of people who have complained to the National Highway Traffic Safety Administration ("NHTSA") about many different cars (Complaint, ¶¶ 74-88), and several class members who own other Nissan cars have asked to be added to an amended complaint in this action.

Second, as alleged in the Complaint, Nissan has issued several TSBs pertaining to the defect at issue here, and they are not limited to the cars owned by the current named Plaintiffs. On September 6, 2016, for example, Nissan released TSB NTB15-099b which applied to "2016 Altimas, 2016 Maximas, 2015-2016 Muranos, 2016 Murano Hybrids, 2015-2016 Rogues, and 2016 Sentras."

Complaint, ¶ 63. The Complaint identifies numerous other TSBs, and while some are related solely to the Rogue, others are not. *See id.* ¶¶ 64-68.

Third, Defendant has produced a chart showing that the radar-based systems installed in its cars were made almost exclusively by two suppliers: Bosch and Continental. Defendants' counsel has described these sensors as the "common denominators" of the alleged defects. Publicly available information shows that only a few different sensor models were installed in the Class Vehicles, and a second chart Defendants recently produced confirms this is the case. By far, the most predominant sensors used are the MRR1Plus made by Bosch and the ARS 4-B (sometimes referred to as the ARS 410) made by Continental. Each of the named Plaintiffs owns a car that was sold with either an MMR1Plus or an ARS 4-B sensor.[2]

Based on publicly available information and information disclosed by Defendants, it appears that each of the following Class Vehicles has either an MRR1Plus sensor made by Bosch, or an ARS 4-B/ARS 410 sensor made by Continental:

- 2016-2019 Nissan Maxima
- 2016-2019 Nissan Sentra
- 2016-2019 Nissan Rogue
- 2017-2019 Nissan Rogue Sport
- 2016-2019 Nissan Altima
- 2018-2019 Nissan Kicks
- 2017-2019 Nissan Pathfinder
- 2018-2019 Nissan Leaf
- 2015-2019 Nissan Murano
- 2019 Infiniti QX50

For other Class Vehicles, Nissan installed either Continental's ARS 3-B sensor, or Bosch's LLR3 sensor. These sensors were installed in Nissan's flagship 2017-2019 Armada vehicle, and in

---

[2] For example, the Bosch sensor for a 2016-2018 Murano can be found here: https://www.ebay.com/itm/NISSAN-2016-17-18-MURANO-284389UC0A-28438-9UC0A-WARNING-OBJECT-SENSOR/372320032512?epid=13028548991&hash=item56b000d700:g:-3oAAOSwJ-pbDuGB

pricier Infiniti-brand cars (2017-2019 Infinity QX30; 2015-2019 Infiniti QX60; 2015-2019 Infiniti QX80; 2015-2019 Infiniti Q50; 2017-2019 Infiniti Q60; 2015-2019 Infiniti Q70; 2017-2019 Nissan Armada). However, the fact that these model cars had different Bosch and Continental sensors does not end the substantial similarity inquiry, nor does it mean that information about the vehicles is irrelevant. The difference in model numbers may simply have to do with immaterial differences in the location of bolt holes or other physical characteristics related to installing the parts in the cars. Or, even if the systems are materially different, they are relevant for the reasons described in Section B(1) above.

### C. Defendants' Burden Argument Should Be Rejected

Defendants claim they should not have to engage in "full blown" discovery as to all Class Vehicles because it is too burdensome. Putting aside the fact that all Class Vehicles are at issue in the Complaint, the Court should reject that argument for two reasons. First, from a legal perspective, unsupported and conclusory claims of undue burden cannot support withholding documents. *See McNeil v. Comty. Probation Servs., LLC*, 2019 WL 5957004, at *3 (M.D. Tenn. Oct. 29, 2019). Defendants furnished no evidence of burden with their written objections, and after nearly a year of failing to provide any such evidence, the Court can and should rule their burden objection is waived.

Second, and more importantly, Defendants are exaggerating the burden and ignoring a compromise position suggested by Plaintiffs. To focus discovery on the most essential issues, Plaintiffs asked Defendants to prioritize the production of documents pertaining to the root causes of false activations and Defendants efforts to address them. Plaintiffs also recently requested sales information, which is generally not burdensome to produce. To be sure, these are not the *only* issues relevant in the case—there still remains, for instance, the problem of the FEB systems randomly

7

deactivating. However, understanding the causes and potential solutions to false activations would represent a *significant* step in this case, and hopefully facilitate narrower follow-up discovery.

Under this proposal, if Defendants are correct that the false activation problem is limited to the model year cars owned by Plaintiffs (notwithstanding customers' experiences to the contrary), then it necessarily follows that there would be few or no documents to produce concerning false activations in other cars, and little burden on Defendants, yet Defendants continue to resist disclosure of information that would shed light on how widespread is the problem of false activations in Nissan and Infiniti cars.

Dated: May 11, 2020	Respectfully submitted,

By: */s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
Benjamin A. Gastel (BPR 28699)
**BRANSTETTER, STRANCH &
JENNINGS, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: 615-254-8801
Fax: 615-255-5419
Email: gerards@bsjfirm.com
    beng@bsjfirm.com

Joel Dashiell Smith
Lawrence Timothy Fisher
Frederick J. Klorczyk, III
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, California 94596
jsmith@bursor.com
ltfisher@bursor.com
fklorczyk@bursor.com

Benjamin L. Bailey
Jonathan D. Boggs
Michael L. Murphy
Bailey & Glasser LLP
209 Capitol Street

8

Charleston, West Virginia 25301
bbailey@baileyglasser.com
jboggs@baileyglasser.com
mmurphy@baileyglauser.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
DICELLO LEVITT GUTZLER LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferr@dlcfirm.com

H. Clay Barnett, III
W. Daniel Miles, III
James Mitchell Williams
BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, Alabama 36104
clay.barnett@beasleyallen.com
cee.miles@beasleyallen.com
mitch.williams@beasleyallen.com

Jaimie Mak
Kim Richman
Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
krichman@richmanlawgroup.com
jmak@richmanlawgroup.com

Daniel A. Schlanger
Schlanger Law Group, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
dschlanger@consumerprotection.net

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

       I certify that on May 11, 2020, I electronically filed the foregoing document using the Court's CM/ECF system, and a copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. The following will receive service via the Court's CM/ECF system at the email addresses listed below or by U.S. Mail pre- paid postage:

| | |
|---|---|
| Brigid M. Carpenter<br>Baker, Donelson, Bearman, Caldwell &<br>Berkowitz, PC (Nash)<br>211 Commerce Street, Suite 800<br>Nashville, TN 37201<br>bcarpenter@bakerdonelson.com | E. Paul Cauley, Jr.<br>S. Vance Wittie<br>Drinker, Biddle & Reath, LLP (Dallas Office)<br>1717 Main Street, Suite 5400<br>Dallas, TX 75201<br>paul.cauley@dbr.com<br>vance.wittie@dbr.com |
| Paul Jeffrey Riehle<br>Matthew Jacob Adler<br>Faegre Drinker Biddle & Reath, LLP<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111<br>paul.riehle@faegredrinker.com<br>matthew.adler@faegredrinker.com | Lynn A. Toops<br>Lisa M. La Fornara<br>**COHEN & MALAD, LLP**<br>One Indiana Square,<br>Suite 1400<br>Indianapolis, IN 46204<br>ltoops@cohenandmalad.com<br>llafornara@cohenandmalad.com |
| Brian Herrington<br>Chhabra Gibbs & Herrington PLLC<br>120 North Congress Street, Suite 200<br>Jackson, MS 39201<br>bherrington@nationalclasslawyers.com | |

                                          */s/ J. Gerard Stranch, IV*
                                          J. Gerard Stranch, IV