**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re Nissan North America Inc. Litigation | Case No. 3:19-cv-00843 |
| | Judge Campbell/Frensley |
| | **[PROPOSED] FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **<u>JURY TRIAL DEMANDED</u>** |

Robert Garneau, Courtney Johnson, Rhonda Perry, Morela Jova, Kimberly Wright, Todd Burrows, David Turner, Roger Brueckman, Scott and Jane Reeves, Hosea Bartlett, Marry Danner, Aurelia Fowler, John Hartwell, Nancy Housell, Keith Huddleston, Jeff Olkowski, and Vaughn Kerkorian ("Plaintiffs") bring this class action against Nissan North America, Inc. ("NNA") and Nissan Motor Co., Ltd. ("NMC") (together, "Nissan" or "Defendants"), individually and on behalf of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class") consisting of all persons who currently or formerly owned or leased a 2015 or newer Nissan or Infiniti vehicle equipped with Forward Emergency Braking or Automatic Emergency Braking system (collectively, the "FEB system"), including but not limited to the Nissan Rogue, Nissan Rogue Sport, Nissan Murano, Nissan Altima, Nissan Maxima, Nissan Armada, Nissan Pathfinder, Nissan Leaf, Nissan Sentra, Infiniti QX30, Infiniti Q50, Infiniti Q60, Infiniti Q70, Infiniti QX50, Infiniti QX60, and Infiniti QX80, (the "Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and/or leased by Nissan. The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:

## NATURE OF THE ACTION

1.      In its quest to be commercially competitive, Nissan designed, tested, validated, marketed, and sold its Forward Emergency Braking system ("FEB") that is featured in every Class Vehicle. According to Nissan itself:

> [T]his intelligent feature uses radar technology to monitor a
> vehicle's proximity to the vehicle ahead, giving the driver audible
> and visual display warnings to help the driver reduce the vehicle's
> speed if a potential frontal collision is detected. If the driver fails to
> respond, the [Forward Emergency Braking] system can apply the

1

brakes, helping the driver to avoid the collision or reduce the speed of impact if it is unavoidable.[1]

2.      However, Defendants wrongfully and intentionally concealed, and continue to conceal, from the pre-purchase/lease transaction to the present day, one or more defects in the Class Vehicles' FEB system that can cause it to falsely engage or otherwise not work as intended ("FEB Defect"). The FEB Defect causes, among other things, (1) the Class Vehicles to detect non-existent obstacles, thereby automatically triggering the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop with no actual need to do so, and/or (2) the FEB system to deactivate itself, thereby distracting the driver and rendering the FEB system disabled and useless. In either scenario, however, the FEB system is not a safety feature, as Nissan claimed, but rather an unpredictable and unreasonable safety hazard.

3.      The FEB Defect can cause the Class Vehicles to stop without warning during normal and intended vehicle operation, thereby posing an unreasonable safety hazard to drivers, passengers, other motorists, and pedestrians. Plaintiffs and other Class members have reported significant, unexpected phantom decelerations and stops due to the false engagement of the Class Vehicle's FEB system, even though no objects – vehicles, pedestrians, or otherwise – were nearby. Additionally, Plaintiffs and other Class members have complained that the FEB system also frequently deactivates itself, detracting their focus from the road and rendering the FEB safety feature useless.

4.      Nissan marketed, and continues to market, the Class Vehicles, and the FEB system specifically, as safe and reliable. Defendants, however, failed to disclose the FEB Defect

_____

[1] The Confidence of Nissan Safety Technology, Nissan Safety Features & Technologies (Dec. 16, 2019), https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html (last visited May 7, 2020).a

2

to consumers, despite their knowledge that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed and continue to conceal the true nature and extent of the FEB Defect from Plaintiffs and the other Class members after failing to disclose it to them at the time of purchase, lease or repair. Had Plaintiffs and the other Class members known about the FEB Defect, they would not have purchased and/or leased the Class Vehicles or would have paid less for them. As a result of their reliance on Defendants' concealment/omissions, and its active concealment, Plaintiffs and the other Class members have suffered an ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

5.     Despite notice of the FEB Defect from, among other things, pre-production testing, consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the FEB Defect, have not offered Plaintiffs and the other Class members a suitable repair or replacement free of charge, and have not offered to reimburse Plaintiffs and the other Class members the costs they incurred relating to diagnosing and repairing the FEB Defect or for the value consumers paid for the FEB feature in the first place. Defendants have refused to repair or replace the Class Vehicles despite the fact that the Class Vehicles are under a comprehensive warranty, as explained in detail below. Thus, Defendants have wrongfully and intentionally transferred the cost of repair of the FEB Defect to Plaintiffs and the other members of the Classes by fraudulently concealing the existence of the FEB Defect.

6.     Under the warranties provided to Plaintiffs and the other members of the Classes, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the

3

Class Vehicles. For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan."[2]

7.      Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including in the FEB System. Because the FEB Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Class Vehicles pursuant to the terms of the warranty. Instead, Nissan has wrongfully shifted the cost of repairing the FEB Defect, or replacing the vehicle, to Plaintiffs and the other Class members. These costs are significant, and no reasonable consumer expects to incur such costs.

8.      Defendants and their network of authorized dealers possess exclusive and superior knowledge and information regarding the FEB Defect. Despite this, Defendants have failed to notify Plaintiffs and the other Class members of the FEB Defect, who could not have reasonably discovered the defect through due diligence. Similarly, Nissan has failed to provide Plaintiffs and the other Class members with any fix or remedy for the FEB Defect, despite voluminous customer complaints.

9.      While promoting the standard, quality, and/or grade of the Class Vehicles, Nissan knowingly concealed/omitted, and actively conceals, the existence of the FEB Defect at the time of purchase or lease or otherwise to increase its profits and decrease its costs (by selling

---

[2] Nissan, 2016 Warranty Information Booklet, https://owners.nissanusa.com/content/techpub/common/2016/2016-nissan-warranty-booklet.pdf (last visited May 7, 2020).

additional Class Vehicles and transferring the cost of the repair of the FEB Defect, or replacement of the vehicle, to Plaintiffs and the other Class members).

10.     Defendants knowingly omitted, concealed and suppressed material facts regarding the FEB Defect, and misrepresented the standard, quality or grade of the Class Vehicles, all at the time of purchase or lease or otherwise, which directly caused harm to Plaintiffs and the other members of the Classes. As a direct result of Defendants' wrongful conduct, Plaintiffs and the other members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair of the FEB Defect; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; (4) diminished value of their vehicles; and/or (5) the price premium attributable to the FEB feature.

11.     Plaintiffs and the other Class members therefore assert claims against Defendants for fraud, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., violation of statutory deceptive trade practices laws of each respective state, and unjust enrichment. As alleged herein, Defendants' wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiffs and the other members of the Classes are entitled to damages and injunctive and declaratory relief.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of

states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens.

14.     This Court has general jurisdiction over NNA, because NNA's principal place of business is in this district. This court has specific jurisdiction over NML, because NML conducts substantial business in this District and some of the actions which gave rise to the claims took place in this state; and products, materials, or things processed, serviced, or manufactured by NML anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. NML is one of the largest automotive manufactures and sellers in the world. NML has, at all relevant times, conducted and continues to conduct business all over the country, including Plaintiffs' states and Tennessee.

15.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and NNA is subject to personal jurisdiction in this District as a California corporation. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(c)(3) with respect to NMC because, as a non-resident of the United States, NMC "may be sued in any judicial district."

**PARTIES**

**Plaintiffs**

      **A.  California**

16.     Plaintiff Robert Garneau is a citizen of California and resides in San Jose, California.

17.     Plaintiff Garneau purchased a new 2018 Nissan Murano SL from Nissan of Serramonte in Colma, California in Fall 2018. Plaintiff Garneau's Murano is a Class Vehicle equipped with the defective FEB.

18.     Prior to purchasing his Class Vehicle, Plaintiff Garneau reviewed Nissan's promotional materials, such as Nissan's website and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

19.     Through his exposure and interaction with Nissan, Plaintiff Garneau was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

20.     In November 2018, Plaintiff Garneau experienced the FEB Defect at approximately 5,000 miles. Specifically, he was operating his Class Vehicle under intended and foreseeable circumstances when the FEB light on the dashboard illuminated and the FEB system engaged with no obstacle in its path. Plaintiff Garneau reported his experience to Premier Nissan where it diagnosed the FEB Defect and replaced his vehicle's radar sensor. However, the repair failed as Plaintiff Garneau continues to experience the FEB Defect through present day.

21.     Plaintiff Garneau did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Garneau's Class Vehicle.

22.     Had Nissan Disclosed the FEB Defect, Plaintiff Garneau would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**B. Florida**

*a. Plaintiff Johnson*

23.     Plaintiff Courtney Johnson is a citizen of Florida and resides in Jacksonville, Florida.

24.     Plaintiff Johnson purchased a new 2018 Nissan Rogue Sport from Nissan of Orange Park in Jacksonville, Florida on September 21, 2018. Plaintiff Johnson's Rogue Sport is a Class Vehicle equipped with the defective FEB.

25.     Prior to purchasing her Class Vehicle, Plaintiff Johnson reviewed Nissan's promotional materials, such as the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

26.     Through her exposure and interaction with Nissan, Plaintiff Johnson was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose the to her the FEB Defect.

27.     On or about February 8, 2019, Plaintiff Johnson experienced the FEB Defect at less than 5,000 miles. While operating her Class Vehicle under intended and foreseeable circumstances, the FEB engaged with no obstacle in its path, bringing her vehicle to a halt in the middle of a road. Plaintiff Johnson reported her experience to Nissan of Jacksonville which diagnosed FEB Defect and reprogrammed the system. However, the repair failed. Plaintiff allowed Nissan of Jacksonville to reprogram the system a second time, but she has lost confidence in the vehicle and turns the system off for fear of repeat phantom braking incidents.

28.     Plaintiff Johnson did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Johnson's Class Vehicle.

29.     Had Nissan disclosed the FEB Defect, Plaintiff Johnson would not have purchased his Class Vehicle, or certainly would have paid less to do so.

8

### b. *Plaintiff Perry*

30.     Plaintiff Rhonda Perry is a citizen of Florida and resides in Alachua, Florida.

31.     Plaintiff Perry purchased a used 2018 Nissan Murano Platinum AWD from HGreg.com on February 12, 2019, and took possession of the vehicle in Alachua, Florida. Plaintiff Perry's Murano is a Class Vehicle equipped with the defective FEB.

32.     Prior to purchasing her Class Vehicle, Plaintiff Perry knew of Nissan's general and uniform marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. At no point did Nissan disclose to her the FEB Defect.

33.     Shortly after purchase at approximately 2,600 miles, while operating her vehicle under intended and foreseeable circumstances the "front radar unavailable due to obstruction" light illuminated on Plaintiff Perry's Murano, with no obstacles in its path. This false activation has occurred dozens of times. Plaintiff Perry reported her experienced to Gainesville Nissan, but the repairs failed as she continues to experience the FEB Defect through present day.

34.     Plaintiff Perry did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Perry's Class Vehicle.

35.     Had Nissan disclosed the FEB Defect, Plaintiff Perry would not have purchased her Class Vehicle, or certainly would have paid less to do so.

### c. *Plaintiff Jova*

36.      Plaintiff Morela Jova is a citizen of Florida and resides in Miami, Florida.

37.     Plaintiff Jova purchased a new 2018 Nissan Rogue Sport from Palmetto 57 Nissan in Miami, Florida in February 2019. Plaintiff Jova's Rogue Sport is a Class Vehicle equipped with the defective FEB.

9

38.     Prior to purchasing her Class Vehicle, Plaintiff Jova reviewed Nissan's promotional materials, including information about safety features on Nissan's website, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

39.     Through her exposure and interaction with Nissan, Plaintiff Jova was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. Despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to her the FEB Defect.

40.     Plaintiff Jova experienced the FEB Defect on May 3, 2019 at approximately 5,600 miles. While operating her Class Vehicle under intended and foreseeable circumstances, the FEB engaged without an obstacle in its path. The false FEB activation caused a collision.

41.     Plaintiff Jova did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Jova's Class Vehicle.

42.     Had Nissan disclosed the FEB Defect, Plaintiff Jova would not have purchased her Class Vehicle, or certainly would have paid less to do so.

**C.  Georgia**

43.     Plaintiff Kimberly Wright is a citizen of Georgia and resides in Riverdale, Georgia.

44.     Plaintiff Wright purchased a new 2018 Nissan Sentra from Nissan South Morrow in Morrow, Georgia in March 2018. Plaintiff Wright's Sentra is a Class Vehicle equipped with the defective FEB.

45.     Prior to purchasing her Class Vehicle, Plaintiff Wright reviewed Nissan's promotional materials, such as the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the defective FEB.

46.     Through her exposure and interaction with Nissan, Plaintiff Wright was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. Despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to her the FEB Defect.

47.     Within a few months of purchase, Plaintiff wright experienced the FEB Defect at less than 5,000 miles. While operating her vehicle under intended and foreseeable circumstances, the obstruction light illuminated, the FEB engaged and shut off with no obstacle in its path. Plaintiff Wright reported her experience to Nissan South Morrow, but it failed to repair the FEB defect as the defect persists.

48.     Plaintiff Wright did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality then represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Wright's Class Vehicle.

49.     Had Nisan disclosed the FEB Defect, Plaintiff Wright would not have purchased her Class Vehicle, or certainly would have paid less to do so.

**D.  Illinois**

50.     Plaintiff Todd Burrows is a citizen of Illinois and resides in Elmwood, Illinois.

51.     Plaintiff Burrows purchased a new 2017 Nissan Rogue from Berman's Nissan of Chicago in June 2017. Plaintiff Burrows' Rogue is a Class Vehicle equipped with the defective FEB.

52. Prior to purchasing is Class Vehicle, Plaintiff Burrows reviewed Nissan's promotional materials, such as safety statistics and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

53. Through his exposure and interaction with Nissan, Plaintiff Burrows was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. Despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

54. In September 2018, Plaintiff Burrows experienced the FEB Defect at approximately 10,000 miles. While operating his vehicle under intended and foreseeable circumstances, Plaintiff Burrows' vehicle came to a sudden stop without an obstacle in its path. Plaintiff Burrows reported his experience to Berman's Nissan of Chicago, but it failed to repair the defect. Subsequent false FEB activations caused Plaintiff Burrows to present his vehicle to Berman's Nissan of Chicago, as second time. The second attempted repair was unsuccessful as the FEB defect continues through present day.

55. Plaintiff Burrows did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Burrows' Class Vehicle.

56. Had Nissan disclosed the FEB Defect, Plaintiff Burrows would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**E. Massachusetts**

57. Plaintiff David Turner is a citizen of Massachusetts and resides in Attleboro, Massachusetts.

58.     Plaintiff Turner purchased a new 2017 Nissan Rogue Sport from Mastria Nissan in Raynham, Massachusetts in February 2018. Plaintiff Turner's Rogue Sport is a Class Vehicle equipped with the defective FEB.

59.     Prior to purchasing his Class Vehicle, Plaintiff Turner reviewed Nissan's promotional materials, such as Nissan's website touting the safety features, and interacted with at least one Nissan sales representative all without Nissan disclosing the FEB Defect. Through his exposure and interaction with Nissan, Plaintiff Turner was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.

60.     Within weeks after his purchasing the vehicle, while operating his vehicle under intended and foreseeable circumstances, Plaintiff Turner's Class Vehicle experienced the FEB defect, stopping suddenly with no obstacle in its path. Plaintiff Turner's Class Vehicle most commonly experienced the FEB Defect in parking garages, where his brakes lock up, suddenly and forcefully, as he approaches an up ramp. Plaintiff Turner notified a Nissan dealership of his experiences, but they failed to repair the FEB defect as it continues through present day.

61.     Plaintiff Turner did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Turner's Class Vehicle.

62.     Had Nissan disclosed the FEB Defect, Plaintiff Turner would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**F.  <u>Michigan</u>**

63.     Plaintiff Roger Brueckman is a citizen of Michigan and resides in Jackson, Michigan.

64.     Plaintiff Brueckman purchased a used 2018 Nissan Maxima from Nissan of Macomb in Clinton Carter Township, Michigan in Fall 2019. Plaintiff Brueckman's Maxima is a Class Vehicle equipped with the defective FEB.

65.     Prior to purchasing his Class Vehicle, Plaintiff Brueckman interacted with at least one sales representative without Nissan disclosing the FEB Defect.

66.     With his exposure and interaction with Nissan, Plaintiff Brueckman was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

67.     Plaintiff Brueckman experienced the FEB Defect twice in January 2020 at approximately 38,000 miles. During each event, Plaintiff Brueckman was operating his vehicle under intended and foreseeable circumstances when his vehicle came to a sudden stop without a nearby obstacle.

68.     Plaintiff Brueckman did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Brueckman's Class Vehicle.

69.     Had Nissan disclosed the FEB Defect, Plaintiff Brueckman would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**G. Missouri**

       *a. The Reeves Plaintiffs*

70.     Plaintiffs Scott and Jane Reeves are citizens of Missouri and reside in St. Ann, Missouri.

71.     The Reeves Plaintiffs purchased a new 2017 Nissan Rogue SL AWD from Napleton Nissan in St. Louis, Missouri on January 11, 2018. The Reeves Plaintiffs' Rogue is a Class Vehicle equipped with the defective FEB.

72.     Prior to purchasing their Class Vehicle, the Reeves Plaintiffs reviewed Nissan's promotional materials, such as the Nissan website, commercials, and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

73.     Through their exposure and interaction with Nissan, the Reeves Plaintiffs were aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason they purchased their Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to them the FEB Defect.

74.     Beginning in February 2018 and continuing to this day, the Reeves Plaintiffs experienced the FEB Defect at approximately 4,000 miles. On numerous occasions, while operating their vehicle under intended and foreseeable circumstances, their Class Vehicle experienced the FEB defect by stopping suddenly with no obstacle in its path. The Reeves Plaintiffs reported their experiences to Nissan of Napleton and Bommarito Nissan Hazelwood, but both dealerships failed to repair the defect, as the FEB Defect continues through present day.

75.     The Reeves Plaintiffs did not receive the benefit of their bargain. They purchased a vehicle of lesser standard, grade, and quality than represented, and they did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of the Reeves Plaintiffs' Class Vehicle.

76.     Had Nissan disclosed the FEB Defect, the Reeves Plaintiffs would not have purchased their Class Vehicle, or certainly would have paid less to do so.

### b. Plaintiff Bartlett

77.     Plaintiff Hosea Bartlett is a citizen of Missouri and resides in St. Charles, Missouri.

78.     Plaintiff Bartlett purchased a new 2017 Nissan Murano from Bommarito Nissan Hazelwood in Hazelwood, Missouri on July 8, 2017. Plaintiff Bartlett's Murano is a Class Vehicle equipped with the defective FEB.

79.     Through his exposure and interaction with Nissan, Plaintiff Bartlett was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

80.     Beginning in March 2018, while operating his car under intended and foreseeable circumstances, the radar obstruction light illuminated, indicating that the FEB system in Plaintiff Bartlett's vehicle is activated falsely. Plaintiff Bartlett reported his experience to Bommarito Nissan Hazelwood, but it has failed to repair the FEB defect, as it continues through to the present day.

81.     Plaintiff Bartlett did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Bartlett's Class Vehicle.

82.     Had Nissan disclosed the FEB Defect, Plaintiff Bartlett would not have purchased his Class Vehicle, or certainly would have paid less to do so.

### H. Mississippi

83.     Plaintiff Mary Danner is a citizen of Mississippi and resides in Meridian, Mississippi.

84.     Plaintiff Danner purchased a new 2018 Nissan Sentra from Nissan of Meridian in Meridian, Mississippi in August 2018. Plaintiff Danner's Sentra is a Class Vehicle equipped with the defective FEB.

85.     Prior to purchasing her Class Vehicle, Plaintiff Danner reviewed Nissan's promotional materials, including sales brochures and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

86.     Through her exposure and interaction with Nissan, Plaintiff Danner was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased his Class Vehicle. Despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to her the FEB Defect.

87.     Shortly after purchase, Plaintiff Danner experienced the FEB Defect with approximately 1,000 miles on her car. While driving under intended and foreseeable circumstances she almost collided with a semi-truck and landed herself in the median when her vehicle stopped suddenly without an obstacle in its path. Plaintiff Danner reported her experience to Nissan of Meridian, where it failed to disclose the FEB Defect to her or repair the defect. Despite reporting her many FEB Defect occurrences to Nissan of Meridian, Plaintiff Danner has experienced, and continues to experience, the FEB Defect through present day.

88.     Plaintiff Danner did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Danner's Class Vehicle.

89.     Had Nissan disclosed the FEB Defect, Plaintiff Danner would not have purchased her Class Vehicle, or certainly would have paid less to do so.

**I. North Carolina**

90.     Plaintiff Aurelia Fowler is a citizen of North Carolina and resides in Durham, North Carolina.

91.     Plaintiff Fowler purchased a new 2019 Nissan Pathfinder from Michael Jordan Nissan in Durham, North Carolina in October 2019. Plaintiff Fowler's Pathfinder is a Class Vehicle equipped with the defective FEB.

92.     Prior to purchasing her Class Vehicle, Plaintiff Fowler reviewed Nissan's promotional materials, such as the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

93.     Through her exposure and interaction with Nissan, Plaintiff Fowler was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to her the FEB Defect.

94.     Within months of purchase, Plaintiff Fowler's Class Vehicle experienced the FEB Defect at less than 5,000 miles. While operating her vehicle under intended and foreseeable circumstances Plaintiff Fowler's vehicle experienced the FEB Defect stop suddenly with no obstacle in its path.

95.     Plaintiff Fowler did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Fowler's Class Vehicle.

96.     Had Nissan disclosed the FEB Defect, Plaintiff Fowler would not have purchased her Class Vehicle, or certainly would have paid less to do so.

**J.  New Jersey**

97.     Plaintiff John Hartwell is a citizen of North Carolina and resides in Hope Mills, North Carolina.

98.     Plaintiff Hartwell purchased a new 2016 Nissan Altima from Sansone Nissan in Woodbridge, New Jersey in Spring 2017. Plaintiff Hartwell's Altima is a Class Vehicle equipped with the defective FEB.

99.     Prior to purchasing his Class Vehicle, Plaintiff Hartwell reviewed Nissan's promotional materials, such as the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

100.    Through his exposure and interaction with Nissan, Plaintiff Hartwell was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

101.    Plaintiff Hartwell's Class Vehicle experienced the FEB Defect at approximately 26,000 miles. While operating his vehicle under intended and foreseeable circumstances Plaintiff Hartwell's Class Vehicle stopped suddenly with no obstacle in its path. Plaintiff Hartwell reported his experience to Flow Nissan in Fayetteville, North Carolina, but it failed to repair the FEB Defect at it continues through present day.

102.    Plaintiff Hartwell did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Hartwell's Class Vehicle.

103.    Had Nissan disclosed the FEB Defect, Plaintiff Hartwell would not have purchased his Class Vehicle, or certainly would have paid less to do so.

### K.  New York

104.     Plaintiff Nancy Housell is a citizen of New York and resides in White Lake, New York.

105.     Plaintiff Housell leased a new 2018 Nissan Rogue from Thruway Nissan in Newburgh, New York, in the fall of 2018. Plaintiff Housell's Rogue is a Class Vehicle equipped with the FEB Defect.

106.     Prior to purchasing her Class Vehicle, Plaintiff Housell reviewed Nissan's promotional materials, such as a sales brochure and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

107.     Through her exposure and interactions with Nissan, Plaintiff Housell was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason she leased her Class Vehicles. Despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to her the FEB Defect.

108.     Plaintiff Housell's Class Vehicle experienced the FEB Defect at approximately 5,000 miles. While operating her vehicle under intended and foreseeable circumstances, Plaintiff Housell's Class Vehicle's obstruction light illuminated, and the vehicle stopped suddenly with no obstacle in its path. Plaintiff Housell continues to experience the FEB Defect through present day.

109.     Plaintiff Housell did not receive the benefit of her bargain. She purchased a vehicle of lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Housell's Class Vehicle.

110.     Had Nissan disclosed the FEB Defect, Plaintiff Housell would not have purchased her Class Vehicle, or certainly would have paid less to do so.

20

**L.  Ohio**

111.    Plaintiff Keith Huddleston is a citizen of Ohio and resides in Columbus, Ohio.

112.    Plaintiff Huddleston purchased a new Nissan Sentra SV from Georgesville Nissan in Columbus, Ohio on October 13, 2018. Plaintiff Huddleston's Sentra is a Class Vehicle equipped with the defective FEB.

113.    Prior to purchasing his Class Vehicle, Plaintiff Huddleston reviewed Nissan's promotion materials, such as a sales brochure and the Monroney sticker, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

114.    Through his exposure and interaction with Nissan, Plaintiff Huddleston was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

115.    Plaintiff Huddleston's Class Vehicle experienced the FEB Defect at approximately 7,000 miles. While operating his vehicle under intended and foreseeable circumstances, the obstruction light illuminated with no obstacle in its path. Plaintiff Huddleston reported his experience to Georgesville Nissan, where it realigned the radar sensor. Plaintiff Huddleston again experienced the FEB Defect, at which point Georgesville Nissan replaced the FEB sensor. However, it failed to repair the defect as Plaintiff Huddleston continues to experience the FEB Defect through present day.

116.    Plaintiff Huddleston did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Huddleston's Class Vehicle.

117. Had Nissan disclosed the FEB Defect, Plaintiff Huddleston would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**M. Pennsylvania**

118. Plaintiff Jeff Olkowski is a citizen of Pennsylvania and resides in Canonsburg, Pennsylvania.

119. Plaintiff Olkowski purchased a new 2018 Nissan Rogue from John Sisson Nissan in Washington, Pennsylvania in October 2018. Plaintiff Olkowski's Rogue is a Class Vehicle equipped with the defective FEB.

120. Prior to purchasing his Class Vehicle, Plaintiff Olkowski reviewed Nissan's promotional materials, such as the Monroney sticker and Nissan's website, and interacted with at least one sales representative without Nissan disclosing the FEB Defect.

121. Through his exposure and interaction with Nissan, Plaintiff Olkowski was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Nissan disclose to him the FEB Defect.

122. Plaintiff Olkowski's Class Vehicle experienced the FEB Defect approximately two days after purchase with approximately 800 miles on his car. While operating his vehicle under intended and foreseeable circumstances, the obstruction light illuminated and Plaintiff Olkowski's vehicle stooped suddenly with no obstacle in its path. Other drivers behind him on Interstate 70 were forced to swerve around his stopped vehicle. Plaintiff Olkowski reported his experience to John Sisson Nissan which replaced the FEB radar sensor. The dealership failed to repair the FEB defect as it continues through present day.

123. Plaintiff Olkowski did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle

that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Olkowski's Class Vehicle.

124. Had Nissan disclosed the FEB Defect, Plaintiff Olkowski would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**N. Texas**

125. Plaintiff Vaughn Kerkorian is a citizen of Texas and resides in Plano, Texas.

126. Plaintiff Kerkorian has owned two Class Vehicles: his previous 2017 Nissan Rogue and his current 2018 Nissan Rogue. Both of Plaintiff Kerkorian's Rogues are Class Vehicles equipped with the defective FEB.

127. Plaintiff Kerkorian purchased a new 2017 Nissan Rogue at Crest Nissan in Frisco, Texas, in July 2017. Prior to purchasing his 2017 Class Vehicle, Plaintiff Kerkorian reviewed Nissan's promotional materials, such as TV and print advertisements and the Monroney sticker touting the Class Vehicles' safety features, and interacted with at least one Nissan sales representative all without Nissan disclosing the FEB Defect. Through his exposure and interactions with Nissan, Plaintiff Kerkorian was aware of Nissan's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.

128. In November 2017, Plaintiff Kerkorian's 2017 Rogue first stopped suddenly due to the FEB Defect. Just as he approached a set of electric train tracks in downtown Plano, Texas, the brakes on his 2017 Rogue automatically applied, and his vehicle braked to a complete stop in the middle of the train tracks, with the engine shut off.

129. In December 2017, Plaintiff Kerkorian's 2017 Rogue again stopped suddenly due to the FEB Defect, at the same electric train tracks in downtown Plano, Texas. Once again, his vehicle braked to a complete stop in the middle of the tracks, with the engine shut off.

130.    After speaking with a representative at the Crest Nissan dealership where he purchased his 2017 Rogue regarding these extremely dangerous situations, the representative informed Plaintiff Kerkorian that it had spoken with Nissan corporate and Nissan was aware of the FEB Defect.

131.    To address Plaintiff Kerkorian's problem, Nissan offered to swap Plaintiff Kerkorian's 2017 Rogue for a new 2018 Rogue that also had AEB/FEB technology. Plaintiff Kerkorian would also have to pay a $1,900 usage tax. Plaintiff Kerkorian accepted this purported solution. Had Plaintiff Kerkorian known that the FEB Defect would also be present in his 2018 Rogue, he would not have accepted the 2018 Rogue.

132.    Plaintiff Kerkorian purchased his new 2018 Rogue at Crest Nissan in Frisco, Texas, in July 2018. In October 2018, Plaintiff Kerkorian's 2018 Rogue stopped suddenly due to the FEB Defect at the same electric train tracks in downtown Plano, Texas. Nissan has since refused to provide any remedy for the FEB Defect in Plaintiff Kerkorian's 2018 Rogue.

133.    Plaintiff Kerkorian did not receive the benefit of his bargains. He purchased and accepted vehicles of lesser standard, grade, and quality than represented, and he did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The FEB Defect has significantly diminished the value of Plaintiff Kerkorian's Class Vehicles.

134.    Had Nissan disclosed the FEB Defect, Plaintiff Kerkorian would not have purchased or accepted his Class Vehicles, or certainly would have paid less to do so.

**Defendants**

135.    Defendant NNA is a California corporation with its principal place of business located at 983 Nissan Drive, Smyrna, TN 37167. NNA does business throughout the United States, including this State and Plaintiffs' States. NNA engages in business, including the

design, manufacturing, advertising, marketing, and sale of Nissan and Infiniti automobiles nationwide, including throughout this State and Plaintiffs' States.

136. Defendant NMC is a Japanese corporation headquartered in Yokohama, Japan. NMC is the parent corporation of NNA. NMC, through its various agents and subsidiaries – including NNA – designs, manufactures, markets, distributes and sells Nissan and Infiniti automobiles in California and multiple other locations in the United States, including this State and Plaintiffs' States.

137. NNA and NMC, collectively, sell Nissan and Infiniti vehicles through a network of dealerships that are the agents of NNA and NMC. In 2017, Nissan sold 1,440,049 cars nationwide, including this State and Plaintiffs' States.[3]

138. There exists, and at all times herein has existed, a unity of ownership between NMC, NNA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Upon information and belief, at all times mentioned herein, each Defendant was acting as an agent and/or employee of the other Defendant, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of the other Defendant. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, the other Defendant.

139. Upon information and belief, Defendant NMC communicates with Defendant NNA concerning virtually all aspects of the Nissan and Infiniti vehicles it distributes within the United States. At all relevant times, NNA acted as an authorized agent, representative, servant,

---

[3] Nissan News USA, Nissan Group reports December and 2017 calendar year U.S. sales (Jan. 3, 2018), https://nissannews.com/en-US/nissan/usa/releases/nissan-group-reports-december-and-2017-calendar-year-u-s-sales (last visited May 7, 2020).

employee and/or alter ego of NMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Nissan and Infiniti vehicles in the United States, including substantial activities that occurred within this jurisdiction.

140. At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Nissan and Infiniti brand names throughout the United States. Defendants and/or their agents designed and manufactured the Class Vehicles. Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets and information, advertisements, and other promotional materials relating to the Class Vehicles.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The FEB System Defect

141. In 2015, Nissan and Infiniti began offering the feature known as "Forward Emergency Braking" ("FEB") as on option on the Class Vehicles. For example, FEB was available as a part of the $2,020 "SL Premium Package" option on the 2017 Nissan Rogue SL.

142. Starting in 2018, Nissan began offering "Automatic Emergency Braking" ("AEB") feature, formally known as Forward Emergency Braking, as part of its newly introduced Intelligent Safety Shield ("ISS"). ISS is Nissan's "way of looking out for you and yours by monitoring, responding and protecting to help keep you and your passengers safe." ISS is an umbrella term for several technologies meant to assist drivers and boost safety, including the FEB system. ISS and FEB are standard on many 2018 Nissan models, including the Nissan Rogue/Rogue Sport, Nissan Altima, Nissan Murano, Nissan Leaf, Nissan Pathfinder, Nissan

Maxima, and Nissan Sentra.[4] Nissan expected to sell roughly 1,000,000 of these vehicles in 2018 alone.[5] Infiniti vehicles use a substantially similar – if not identical – system.[6]

143.    As demonstrated below,[7] the FEB system utilizes a radar and/or camera system that measures the distance between the vehicle and its surrounding objects. If the FEB system detects rapid decrease in distance between the vehicle and an object accompanied with no driver responsive inputs, the FEB system "provide[s] audible and visual alerts and appl[ies] braking to help you avoid or mitigate a frontal collision with a vehicle ahead."



144.    However, Nissan under designed, engineered, tested, and validated the FEB system. The FEB Defect, among other things, causes (1) the Class Vehicles to detect non-existent obstacles, triggers a braking response and causes the Class Vehicles to abruptly

---

[4] Nissan News Room, Nissan to offer standard Automatic Emergency Braking (AEB) on one million U.S. vehicles in 2018 model year (June 8, 2017), https://nissannews.com/en-US/nissan/usa/releases/nissan-to-offer-standard-automatic-emergency-braking-aeb-on-one-million-u-s-vehicles-in-2018-model-year?query=automatic+emergency+braking (last visited May 7, 2020).
[5] Nissan Safety Features & Technologies, The Confidence of Nissan Safety Technology (Dec. 16, 2019), https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html (last visited May 7, 2020).
[6] Infiniti, Forward Emergency Braking, https://www.infinitiusa.com/infiniti-now/technology/forward-emergency-braking.html (last visited May 7, 2020).
[7] https://www.glendalenissan.com/blog/how-does-nissan-automatic-emergency-braking-work/ (last visited May 20, 2020).

decelerate or stop completely, despite no need for this action., and/or (2) the FEB system to deactivate itself, thereby distracting the driver and rendering the FEB system unavailable and useless. The FEB Defect presents a safety hazard that distracts the Class members and renders the Class Vehicles unreasonably dangerous to consumers because it severely impacts a driver's ability to control vehicle speed as expected under normal driving conditions and maintain an appropriate speed based on traffic flow, thereby increasing the risk of a rear-end collision.

145.    All Class Vehicles use the same or substantially similar FEB System.

**B.    Nissan's Knowledge of the FEB Defect**

146.    Nissan became aware of the FEB Defect through sources not available to Plaintiffs and the other members of the Classes, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers and suppliers, including Bosch and Continental.

147.    Nissan had and continues to have a duty to fully disclose the true nature of the FEB Defect to Class Vehicle owners, among other reasons, because the FEB Defect poses an unreasonable safety hazard; because Nissan had and has exclusive knowledge or access to material facts about the Class Vehicles' FEB systems that were and are not known to or reasonably discoverable by Plaintiffs and the other members of the Classes; and because Nissan has actively concealed the FEB Defect from its customers at the time of purchase or repair and thereafter.

148.    Specifically, Defendants: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the FEB Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their FEB systems were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact that the Class Vehicles and their FEB systems were defective, despite the fact that Defendant learned of the FEB Defect before it placed the Class Vehicles in the stream of commerce.

149.    Nissan has been aware of problems with the FEB feature since at least 2015, given its release of a series of Technical Service Bulletins ("TSBs") to dealers related to the radar sensor used in the Class Vehicles' FEB systems starting in 2016. "Manufacturers typically issue more TSBs in the first model year of a new or redesigned vehicle when, despite extensive pre-production testing, they discover design, engineering and manufacturing flaws after the vehicles are exposed to the ultimate test – being driven in the real world."[8] As detailed further below, in 2015, Class members began complaining about the FEB Defect in model year 2015 Nissan Muranos – the first Class Vehicle to offer the option.[9] *See infra* ¶¶ 47-61.

150.    On September 6, 2016, Nissan released Technical Service Bulletin NTB15-099b concerning the radar sensor used in the Intelligent Cruise Control ("ICC") and FEB systems in the Class Vehicles.[10] The TSB was designed to remedy two Diagnostic Trouble Codes ("DTCs")

---

[8] *See* Chicago Tribune, Recall, TSB or customer service campaign: What's the difference? (July 29, 2014), https://www.chicagotribune.com/classified/automotive/chi-recall-tsb-or-customer-service-campaign-whats-the-difference-story.html (last visited May 7, 2020).
[9] *See* YouTube, 2015 Nissan Murano – Forward Emergency Braking System (if so equipped) (Apr. 17, 2015), https://www.youtube.com/watch?v=J-qiiVMReLw (last visited May 7, 2020).
[10] Nissan, Technical Service Bulletin, NTB15-099b (Sept. 6, 2016), https://static.nhtsa.gov/odi/tsbs/2016/SB-10091586-2280.pdf (last visited May 7, 2020).

– DTC C1A16 (RADAR BLOCKED) and DTC C1A12 (LASER BEAM OFFCNTR) and applied to the following Nissan vehicles: 2016 Altimas, 2016 Maximas, 2015-2016 Muranos, 2016 Murano Hybrids, 2015-2016 Rogues, and 2016 Sentras.

151. On November 28, 2016, Nissan released TSB NTB16-116 that noted a potential impact on FEB.[11]

152. On August 1, 2017, Nissan issued TSB PC499 mandating a "quality assurance hold" related to the "front camera."

153. On February 1, 2018, Nissan released TSB NTB18-008 which "applie[d] only to vehicles equipped with Automatic Emergency Braking (AEB) or Forward Emergency Braking (FEB)."

154. On June 8, 2018, Nissan released TSB NTB18-041 concerning the "Unexpected Operation of AEB, FEB OR FCW [Forward Collision Warning]" in 2018 Rogue, Rogue Hybrid, and Rogue Sport vehicles. The TSB stated that "The following system(s) operate unexpectedly or the customer reports unexpected operation: AEB (Automatic Emergency Braking); FEB (Forward Emergency Braking); FCW (Forward Collision Warning). On July 19, 2018, Nissan released an amended TSB NTB18-041a, updated to include 2017-18 Rogue, Rogue Hybrid, and Rogue Sport vehicles.

155. On August 17, 2018, Nissan released TSB PC637 informing dealers it was "conducting a quality action to reprogram the Laser Radar and Advanced Drive Assist System (ADAS) software the on specific MY2018 Rogue (T32) vehicles built in the Smyrna, TN manufacturing plant. These vehicles are either currently in dealer inventory or assigned and in

---

[11] NHTSA, 2016 Nissan Rogue, https://www.nhtsa.gov/vehicle/2016/NISSAN/ROGUE/SUV/AWD#manufacturerCommunications (last visited May 7, 2020).

transit to the dealer. The software update is designed to help improve the performance of

Automatic Emergency Braking (AEB), Forward Emergency Braking (FEB), and Forward

Collision Warning (FCW) systems in the affected vehicles."

156.     In Digital Trends' September 2018 article, Nissan acknowledged the FEB Defect

and its failure to remedy it to date:

> After Digital Trends identified the issue in the 2018 Nissan Sentra
> and brought it to the automaker's attention, the company
> acknowledged the problem, and said it was working to replace the
> faulty part.
>
> "Nissan is aware of a relatively limited population of Sentra
> customers who are reporting conditions similar to that which you
> described," Dan Bedore, Director of Communications for Nissan,
> told Digital Trends. "Our engineering team has identified the cause
> to be a supplied-component issue… Nissan is well into the
> standard process for obtaining counter-measure parts and
> informing our dealers of the remedy, which is expected in the
> coming weeks."
>
> A Bosch spokesman told Digital Trends that it was helping Nissan
> with the issue, but declined to specify which other automakers use
> the module, or who make the radar chips within them.
>
> "We hope you will appreciate that, as a matter of principle, we do
> not comment on actions of our customers. We are working closely
> with Nissan to support it in the measures it has taken. We hope you
> will understand that only the automaker is in a position to answer
> questions in detail," the company said.[12]

157.     On January 25, 2019, issued after this matter was commenced, Nissan released

NPSB18-443 AEB U – "Automatic Emergency Braking (AEB) Update Notification Letter" –

related to the 2017-2018 Nissan Rogue and Rogue Sport. In this bulletin, Nissan stated "[i]n rare

---

[12] Digital Trends, Exclusive: Faulty radars are compromising Nissan's emergency braking
system (Sept. 20, 2018), https://www.digitaltrends.com/cars/faulty-radars-compromising-nissan-emergency-braking-system/ (last visited May 7, 2020).

instances and unique roadway environments such as certain types of railroad crossings and metal overpasses, the AEB system in some vehicles may activate braking when not needed."

158.    As the Center for Auto Safety ("CAS") just explained on March 21, 2019, this "'Customer Service Initiative' intended to 'increase awareness of an available update for the Automatic Emergency Braking (AEB) system.' Presumably, this update is the repair outlined in the July 2018 TSB. … [However,] the summary portion available suggests that <u>Nissan's communication to Rogue owners does not acknowledge the potential safety issue involved. The language treats the problem as no more than a performance update, thus providing little incentive for consumers to avail themselves of the repair opportunity until they experience the problem.</u>"[13]

159.    But it gets even worse. As CAS details, "the repair described in the Nissan 'Customer Service Initiative' is available to owners at no cost only during the basic coverage period of the warranty, 3 years or 36,000 miles. This means that within the next year, some owners of defective Rogue AEB systems will begin being forced to pay for repairs that should have been provided under a recall at no cost and for a substantially longer period than the basic warranty."[14]

160.    Federal law requires automakers, like Nissan, to notify (and update) the National Highway Traffic Safety Administration of potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Nissan should (and does) monitor the NHTSA

---

[13] The Center for Auto Safety, Petition for Defect Investigation (Mar. 21, 2019), https://www.autosafety.org/wp-content/uploads/2019/03/Center-for-Auto-Safety-Nissan-Rogue-AEB-Defect-Petition-FINAL.pdf (last visited May 7, 2020). On March 21, 2019, CAS submitted a petition to NHTSA to "initiate a Defect Investigation into false activation of the emergency braking system that is placing Rogue owners and other road users in danger." *Id.*
[14] *Id.*

database to track reports of defective FEB systems. From this source, Nissan knew that the Class Vehicles were experiencing unusually high levels of false engagements causing abrupt slow-downs or stops or deactivations.

161. As CAS explains, it "found 87 such complaints in NHTSA's VOQ data for the 2017-18 Rogue. All of these complaints indicate that the Rogue's [FEB] engaged when no obstruction was in the path of the vehicle. Many complaints indicate that braking is abrupt or forceful, endangering both the Rogue occupants as well as people in vehicles nearby, who are forced to avoid a collision with a suddenly stopped vehicle."[15]

162. The following example complaints filed by consumers with NHTSA and posted on the Internet demonstrate that the FEB Defect is a widespread safety hazard that continues to plague the Class Vehicles. Consumer complaints began with the 2015 Nissan Murano:

- **November 4, 2016 – Winnetka, IL – Forward Collision Avoidance**

  THE FORWARD EMERGENCY BRAKING SYSTEM WARNING LIGHT COMES ON (THIS MEANS THE SENSOR IS NOT WORKING AND THE EMERGENCY WARNING IS NOT WORKING; FURTHER YOU CANNOT USE CRUISE CONTROL WHEN THE LIGHT IS ON). THIS HAS BEEN A PROBLEM FROM THE BEGINNING OF OWNING THE CAR. THE DEALER TRIED MANY TIMES TO REPAIR THE PROBLEM, ALL UNSUCCESSFUL. NEXT THE DEALER REPLACED THE SENSOR, AND THE PROBLEM STILL EXISTS. THE WARNING LIGHT COMES ON WHEN THE VEHICLE HAS BEEN DRIVEN FOR A FEW MINUTES- 5 TO 30 MINUTES AFTER STARTING.

- **February 27, 2017 – West Hills, CA – Forward Collision Avoidance**

  TL* THE CONTACT OWNS A 2015 NISSAN MURANO. WHILE DRIVING VARIOUS SPEEDS, THE FORWARD BRAKING SYSTEM WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER FOR ROUTINE MAINTENANCE. THE CONTACT STATED TO THE TECHNICIAN THAT THE FORWARD BRAKING

---

[15] *Id.*

WARNING INDICATOR ILLUMINATED. IT WAS
DIAGNOSED THAT THE WARNING INDICATOR WAS
ILLUMINATED DUE TO THE VEHICLE BEING BUMPED
AND THAT THE EMERGENCY BRAKING SYSTEM WAS
TURNED OFF. THE ISSUE PERSISTED. THE VEHICLE WAS
TAKEN TO AN INDEPENDENT MECHANIC WHERE THE
ISSUE COULD NOT BE DIAGNOSED. THE CONTACT
MENTIONED THAT THE VEHICLE WAS PREVIOUSLY HIT
A MONTH PRIOR. THE CONTACT ALSO STATED THAT
THE FRONT DRIVER AND PASSENGER SIDEVIEW
MIRRORS "CLOSE VEHICLE" WARNING SIGNALS NO
LONGER ILLUMINATED WHEN OTHER VEHICLES WERE
CLOSE. THE MANUFACTURER WAS NOT MADE AWARE
OF THE FAILURES. THE FAILURE MILEAGE WAS 12,000.

163.    Complaints for the 2016 Nissan Murano are similar:

- **October 27, 2018 – Greensboro, NC – Forward Collision Avoidance**

    ADAPTIVE CRUISE CONTROL AND FORWARD
    EMERGENCY BRAKING (FEB) SYSTEM BECOMES
    SPONTANEOUSLY DISABLED DURING DRIVING. THIS
    POSES A SERIOUS ISSUE WHEN ACTUALLY DRIVING THE
    CAR. THE CAR IS IN MOTION WHEN THIS HAPPENS. THE
    SYSTEM CAN ONLY BE RESET BY STOPPING THE CAR,
    TURNING OFF THE IGNITION AND THEN RE-STARTING
    THE ENGINE.

164.    Complaints for the 2017 Nissan Murano are similar:

- **August 19, 2018 – Orland Park, IL – Forward Collision Avoidance**

    MY VEHICLE HAD A WARNING LIGHT COME ON
    STATING "FRONT COLLISION AVOIDANCE
    UNAVAILABLE". IT WOULD SHUT OFF THE CRUISE
    CONTROL. TOOK IT INTO THE DEALER. THEY SAID THE
    VEHICLE OPERATED AS DESIGNED. TOOK IT BACK IN
    SEVERAL WEEKS LATER DEMANDING THEY FIX THE
    PROBLEM. TOOK A TEST DRIVE WITH THE TECHNICIAN.
    PROBLEM DID NOT REOCCUR. I GOT OUT. THE
    TECHNICIAN STARTED THE CAR TO PULL IT IN THE
    SHOP AND THE WARNING CAME ON. THEY TRACED THE
    PROBLEM TO A SENSOR. THE SENSOR IS NOT
    AVAILABLE AND IS ON BACKORDER. IN THE MEAN
    TIME THE CRUISE DOES NOT OPERATE AND THE FRONT
    COLLISION AVOIDANCE DOES NOT WORK (WAITING 5

WEEKS NOW). CANNOT DEPEND UPON THE COLLISION
AVOIDANCE EVEN THOUGH THEY ADVERTISE IT.

165.    Complaints for the 2018 Nissan Murano are similar:

- **Sep 17, 2018 - Washington, DC - Forward Collision Avoidance**

    TL* THE CONTACT OWNS A 2018 NISSAN MURANO.
    WHILE DRIVING VARIOUS SPEEDS, THE CRUISE
    CONTROL ENGAGED WITHOUT WARNING. THE
    CONTACT STATED THAT THE CRUISE CONTROL
    FEATURE OF THE VEHICLE WAS CONTROLLED BY A
    COLLISION CONTROL SYSTEM, WHICH
    MALFUNCTIONED WHILE ON AN INCLINE AND WHILE
    DRIVING VARIOUS SPEEDS ON A BRIDGE. EACH TIME
    THE FAILURE OCCURRED, THE VEHICLE DECELERATED
    WITHOUT ANY WARNING OR BRAKE LIGHTS
    ILLUMINATED. THE DEALER WAS NOT MADE AWARE OF
    THE FAILURE. THE MANUFACTURER WAS MADE AWARE
    OF THE FAILURE AND PROVIDED THE CONTACT WITH
    CASE NUMBER: 32755178. THE FAILURE MILEAGE WAS
    APPROXIMATELY 500.

166.    Complaints for the 2016 Nissan Rogue are similar:

- **July 2, 2018 – Nashville, TN – Forward Collision Avoidance**

    FRONT COLLISION SENSOR GOES OFF AT RANDOM
    SPEEDS WHILE TRAVELING FORWARD WITH NO ONE ON
    THE ROAD AHEAD. THE VEHICLE AUTOMATICALLY
    APPLIES THE BRAKE IN SOME INSTANCES. THE
    INFOTAINMENT SYSTEM ALSO RESETS ITSELF
    PERIODICALLY. PRIOR SERVICE HAS HAD THE ENTIRE
    BODY CONTROL MODULE REPLACED, BUT ELECTRICAL
    ISSUES PERSIST. MULTIPLE DEALERS HAVE NOT BEEN
    ABLE TO RECREATE THE PROBLEM EVEN THOUGH
    ISSUES ARE STILL PRESENT. SIGNIFICANT SAFETY
    HAZARD BY VEHICLE AUTOMATICALLY APPLYING
    BRAKE RANDOMLY AND NISSAN STILL DOES NOTHING
    TO RESOLVE THE ISSUE. THESE INSTANCE HAPPEN ON
    MULTIPLE OCCASIONS.

167.    Complaints for the 2017 Nissan Rogue are similar:

- **Oct 09, 2018 - Villas, NJ - Forward Collision Avoidance**

TL* THE CONTACT OWNS A 2017 NISSAN ROGUE. WHILE DRIVING APPROXIMATELY 40 MPH AND ATTEMPTING TO STOP THE VEHICLE, THE BRAKE PEDAL TRAVELED TO THE FLOORBOARD WHEN IT WAS DEPRESSED. THE VEHICLE DID NOT STOP AND REAR ENDED THE PRECEDING VEHICLE. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES THAT LATER REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DAMAGED AND TOWED TO A PRIVATE PROPERTY. THE CONTACT CALLED TEAM NISSAN AT (856) 696-2277 (LOCATED AT 1715 S DELSEA DR, VINELAND, NJ 08360) AND WAS REFERRED TO THE MANUFACTURER. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND ASKED IF THE CONTACT WANTED THE VEHICLE REPAIRED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 13,000. THE VIN WAS NOT PROVIDED.

- **Mar 01, 2018 - Del Ray Beach, FL - Crash Imminent Braking**

  TL* THE CONTACT OWNS A 2017 NISSAN ROGUE. THE CONTACT STATED THAT THE FORWARD EMERGENCY BRAKING PACKAGE FUNCTION FAILED TO PROVIDE A WARNING AND DID NOT BRAKE WITHOUT THE CONTACT APPLYING FORCE TO THE BRAKE PEDAL. THE DEALER (WEST PALM BEACH NISSAN, 3870 W BLUE HERON BLVD, RIVIERA BEACH, FL 33404, (561) 612-4825) WAS NOTIFIED AND TESTED THE VEHICLE, CONSUMER WAS LATER TOLD THAT TEST WAS UNOFFICIAL AS CORPORATE SAID TOLD THEM THEY COULDN'T TEST FEATURE. DELRAY NISSAN SAID THE SAME FEATURE IN INFINITI QX60 WORK PERFECTLY SO DOES CRUISE CONTROL BRAKING IN BOTH VEHICLES. HOWEVER WITHOUT CRUISE CONTROL ACTIVATED THE NISSAN FORWARD COLLISION SEEMS NOT WORK. THE APPROXIMATE FAILURE MILEAGE WAS 130.

- **Jan 10, 2018 - Mansfield, OH - Forward Collision Avoidance**

  THERE IS A SAFETY ISSUE WITH THE FRONT BRAKING SYSTEM. THERE IS EVEN A DOCUMENT SEND TO THE NISSAN DEALERSHIPS NOTIFYING THEM THAT IT IS A KNOWN ISSUE, BUT THERE IS NO FIX AS OF YET THE ENGINEERS CANNOT EVEN FIND A CAUSE FOR THE ISSUE. I ASKED FOR A COPY OF THE LETTER, BUT, OF

COURSE, IT IS A "CONFIDENTIAL" DOCUMENT AND ONLY PRIVILEGED PARTIES ARE ABLE TO HAVE ACCESS TO IT. WHAT HAPPENS IS THERE WILL BE AN AUDIBLE BEEPING (TWO-THREE TIMES) AND IMMEDIATELY AFTER YOUR CAR WILL SLAM ON THE BRAKES ON IT OWN, WHICH IN TURN KICKS ON THE ANTI-LOCK BRAKES. THERE WILL BE NOTHING ON THE SENSOR OR NOTHING IN YOUR PATH IN FRONT OF YOU. IT DOES THIS SPONTANEOUSLY. THIS WAS WHILE I WAS DRIVING!!!! THIS HAS HAPPENED TO ME 3 TIMES ALREADY. WHEN HOOKED UP TO A DIAGNOSTIC TESTER, IT THROWS A CODE THAT THERE WAS SOMETHING IN FRONT OF THE SENSOR. THE DATE MARKED ON THIS CLAIM/REPORT WAS THE LAST TIME IT HAS HAPPENED....SO FAR....

- **Dec 31, 2017 - Vacaville, CA - Forward Collision Avoidance**

  THIS VEHICLE WAS PURCHASED NEW FROM THE DEALERSHIP, NISSAN OF VACAVILLE, ON 9-16-2017. ON 10-26-2017 WHILE TRAVELING AT APPROXIMATELY 35 MPH THE VEHICLE'S FORWARD EMERGENCY BRAKING SYSTEM (FEB) SUDDENLY AND UNEXPECTEDLY ACTIVATED, BRING THE CAR TO A FULL AND COMPLETE STOP IN THE MIDDLE OF THE ROAD. THE BRAKING SYSTEM DISENGAGED WITHIN A FEW SECONDS AND I WAS ABLE TO PULL TO THE SIDE OF THE ROAD. THERE WERE NO ADVERSE CONDITIONS, OBSTRUCTIONS, OR VEHICLES WITHIN A DANGEROUS DISTANCE TO HAVE CAUSED THE ACTIVATION. THE DASHBOARD WARNING LIGHTS DISPLAYED THE ALERT MESSAGE "WARNING" "MALFUNCTION." THE VEHICLE WAS SUBSEQUENTLY TOWED TO AUTOCOM NISSAN OF CONCORD FOR SERVICE AND DIAGNOSIS. I WAS TOLD CODES U1002, C1B5D, AND C1A16-97 WERE STORED IN THE COMPUTER SYSTEM. C1A16-97 RELATES TO AN OBSTRUCTION OR BLOCKED RADAR SENSOR, BUT THAT ALL THE STORED CODES WERE IN THE PAST. C1A16-97 WAS STORED AT 1983 MILES - I EXPERIENCED NO ACTIVATION OF THE SYSTEM AT THAT TIME. ACCORDING TO THE DEALERSHIP THERE WERE NO STORED CODES RELATED TO TODAY'S INCIDENT. NISSAN TECH LINE MADE A REMOTE DIAGNOSIS AND CONCLUDED A LOOSE LICENSE PLATE FRAME LIKELY HAD CAUSED AND OBSTRUCTION, ACTIVATING THE SYSTEM. THIS IS IN CONFLICT WITH THE OWNERS MANUAL'S EXPLANATION OF FEB SHUT DOWN IN THE

EVENT OF AN OBSTRUCTION. ON 12-19-2017 I RETURNED
THE VEHICLE TO THE DEALERSHIP WHERE I
PURCHASED THE CAR. AFTER FOUR DAYS OF
DIAGNOSTIC AND ROAD TESTING I WAS TOLD THAT,
ACCORDING TO NISSAN TECH LINE, SINCE THE
DEALERSHIP WAS UNABLE TO DUPLICATE THE
MALFUNCTION DURING THE TEST DRIVE, THEN THE
CAR IS CONSIDERED OPERATIONAL AND SAFE AND
COULD BE RETURNED TO THE CUSTOMER. AND
ALTHOUGH FINDING MULTIPLE PAST CODES STORED
ECM-UL00L, ASB-UL002, BCM UL000-00, UL000-01, CLB40-
49, CLB30-49, UL000-00, ICC /ADAS-C1B53-04, CLB54-00,
UL000-01 ALL INDICATION MALFUNCTION. NONE OF
WHICH HAVE BEEN RESOLVED OR REPAIRED. ## VIN
PASSED ## NISSAN ROUGE S FWD 2017.5 ##

- **Dec 22, 2017 - Roswell, GA - Forward Collision Avoidance**

  THE FIRST TIME THE VEHICLE MALFUNCTIONED, I WAS
  DRIVING IN A GROCERY STORE PARKING LOT WITH A
  PERSONAL FRIEND AND SUDDENLY THE CAR'S
  EMERGENCY BRAKE PROTECTION ACTIVATED JOLTING
  THE CAR TO A STOP. THE SECOND OCCURRENCE WAS IN
  A PARKING DECK (DIFFERENT FROM THE FIRST
  LOCATION) AND THE CAR AGAIN ACTIVATED THE
  EMERGENCY BRAKE PROTECTION SYSTEM JOLTING
  THE CAR TO A STOP. I THEN FELT THIS WAS A SAFETY
  ISSUE AND BROUGHT THIS INTO THE NISSAN
  DEALERSHIP. THEY CHECKED THE CAR AND CALLED
  REPORTING THEY COULD NOT FIND ANYTHING WRONG
  WITH THE CAR AND I SHOULD PICK IT UP. I PICKED THE
  CAR UP AND CONTINUED TO DRIVE IT UNTIL I
  SWITCHED CARS WITH A PERSONAL FRIEND WHO USED
  THE CAR TO DRIVE ONE MILE BACK TO HOME DOWN A
  4 LANE ROAD. UPON COMING TO AN INTERSECTION,
  SHE REPORTS SHE BEGAN SLOWING DOWN AND GOT IN
  A TURN LANE TO MAKE A LEFT ONTO OUR
  NEIGHBORHOOD ROAD AND AS SHE WAS
  APPROACHING THE LIGHT, THE CAR ACTIVATED THE
  EMERGENCY BRAKING SYSTEM, AGAIN JOLTING THE
  CAR TO A STOP. SHE STATES DURING AND AFTER THE
  CAR CAME TO A COMPLETE STOP, SHE KEPT HER FOOT
  ON THE BREAK THE ENTIRE TIME AND WHILE
  DECOMPRESSING THE BRAKE, THE CAR THEN JOLTED
  FORWARD CRASHING INTO THE CAR IN FRONT OF HER. I
  HAD THE CAR TOWED IN TO THE NISSAN DEALERSHIP
  AND HAD CORPORATE NISSAN STEP IN TO INVESTIGATE

THE CAR. 6 WEEKS LATER THEY INVESTIGATED THE CAR REPORTING THAT NO ERROR WAS FOUND WITH THE CAR AND AGAIN I SHOULD PICK MY VEHICLE UP. I REQUESTED SPECIFIC TESTS AND ASKED THE TESTING PROCESS FOR THE CAR AND WAS ADVISED BY THE INVESTIGATION DEPARTMENT THAT THEY COULD NOT DISCLOSE THAT INFORMATION AND THAT THE TESTING AND RESULTS WERE "PROPERTY OF NISSAN" AND THAT THEY WERE NOT OFFERING ANY FURTHER ASSISTANCE.

- **Sep 30, 2018 - Carnegie, PA - Forward Collision Avoidance**

  AUTO EMERGENCY BRAKING IS ACTIVATING WHEN THERE IS NO VEHICLE OR OBSTACLE IN FRONT OF ME. IT HAPPENEND THE FIRST TIME I LEFT THE DEALER ON AN OPEN HIGHWAY. IT HAPPENED AGAIN IN A DARK PARKING GARAGE, AND AGAIN WHEN I WAS GOING LESS THAN 10 MILES AN HOUR OVER RAILROAD TRACKS. IT HAPPENED TO MY HUSBAND GOING OVER A BRIDGE WITH METAL EXPANSION JOINTS. GOOD THING NO ONE WAS BEHIND US WHEN IT HAPPENED. I WILL BE CALLING THE DEALER IN THE MORNING. MY ROGUE HAS AROUND 3,000 MILES ON IT.

  168.    Complaints concerning the 2018 Nissan Rogue are similar:

- **Sep 24, 2018 - Medford, NY - Dynamic Brake Support/Brake Assist**

  TL* THE CONTACT OWNS A 2018 NISSAN ROGUE. THE CONTACT STATED THAT THE VEHICLE'S AUTOMATIC BRAKING FEATURE INDEPENDENTLY ACTIVATED WHILE THE VEHICLE WAS BEING DRIVEN AT VARIOUS SPEEDS. THERE WERE NO OBSTACLES IN THE VEHICLE'S PATH. THE FAILURE OCCURRED WITHOUT WARNING ON APPROXIMATELY SIX OCCASIONS. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 1,600.

- **Sep 17, 2018 - Lubbock, TX - Forward Collision Avoidance**

  MY 2018 NISSAN ROGUE BRAKED SUDDENLY, FOR NO REASON. TRAVELING 30 MPH ON A QUIET NEIGHBORHOOD STREET. THE LIGHTS ON THE DASHBOARD FLASHED BRIEFLY, THERE WAS A LOUD GRINDING NOISE, THEN SUDDEN AND COMPLETE STOP IN THE MIDDLE OF THE ROAD. NO CARS IN FRONT OR

BACK OF MINE. THE ONLY THING IN THE ROAD WAS A
METAL DRAIN COVER. VERY FRIGHTENING
EXPERIENCE.

- **Jul 24, 2018 - The Villages, FL - Forward Collision Avoidance**

  WE PURCHASED 2018 NISSAN ROGUE IN JUNE. TODAY
  WE DROVE 75 MILES AND THE EMERGENCY BRAKING
  ACTIVATED 4 TIMES FOR NO REASON. ONCE ON THE
  INTERSTATE, ONCE ON THE OFF RAMP, AND TWICE ON
  THE HIGHWAY. THERE WERE NO RR TRACKS OR OTHER
  OBSTACLES. THIS HAS HAPPEN TO ME ON TWO OTHER
  OCCASIONS. THE VEHICLE HAS ALMOST 1000 MILES ON
  IT. I+M AFRAID SOMEONE WILL THINK I+M BRAKE
  CHECKING THEM! ILL BE SPEAKING TO THE DEALER,
  BUT I SAW OTHER COMPLAINTS HERE AND DECIDED TO
  REGISTER MINE ALSO. WHEN THIS HAPPENS IT SOUNDS
  AS IF YOU+RE DRIVING OVER +RUMBLE STRIPS+.

- **Jul 12, 2018 - Pittsburgh, PA - Forward Collision Avoidance**

  TWO WEEK OLD NISSAN ROGUE. THE EMERGENCY
  BRAKING SYSTEM ACTIVATES IN THE PARKING
  GARAGE WHERE I WORK. IT SEEMS TO HAPPEN
  ANYWHERE IN THE GARAGE (ANY FLOOR) AND WHEN I
  SURPASS ~15MPH. SPOKE WITH THE DEALER AND THEY
  ARE GOING TO TAKE A LOOK AT IT, BUT GOING BY THE
  NUMBER OF SIMILAR COMPLAINTS ON THIS SITE I'M
  BEGINNING TO THINK NISSAN NEEDS TO ISSUE A FIX
  AND RECALL.

169. Complaints concerning the 2017 Nissan Maxima are similar:

- **Jul 11, 2018 - Magnolia, NJ - Forward Collision Avoidance**

  THE PROBLEM BEGAN IN MY 2017 NISSAN MAXIMA. I
  TOLD THE DEALERSHIP THAT THE EMERGENCY
  AUTOMATIC BRAKING SYSTEM INITIATED WHILE NO
  OTHER CARS WERE AROUND. THEY TRADED ME IN TO
  THE 2018 NISSAN ROGUE AND THE SAME ISSUE HAS
  OCCURRED 3 TIMES IN THIS VEHICLE. EACH TIME,
  THERE WERE NO OTHER VEHICLES AROUND. THE
  DEALERSHIP CLAIMED THERE IS NOTHING WRONG
  WITH THE VEHICLE. IT WASN'T UNTIL I CONTACTED
  CORPORATE THAT THEY ADMITTED THEY KNOW
  THERE'S A DEFECT, BUT NO FIX WAS AVAILABLE YET.
  THEY KNOWINGLY JEOPARDIZED MY INFANT SON'S

SAFETY AND LIED TO ME. THIS DEFECT IS SCARY AND
SHOULDN'T BE ALLOWED TO BE SWEPT UNDER THE
RUG BY THE DEALERSHIPS. I NO LONGER FEEL SAFE
DRIVING WITH NISSAN.

- **Jun 23, 2018 – Fort Lauderdale, FL - Forward Collision Avoidance**

    APPLIED BRAKES IN EMERGENCY SITUATION. ABS
    SYSTEM FAILED TO OPERATE AND ALL FOUR WHEELS
    LOCKED AND CAR SLID INTO OTHER VEHICLE. ALSO
    CAR EQUIPPED WITH BRAKE ASSIST IT TO FAILED TO
    OPERATE.

170.    Consumers have logged similar complaints regarding the 2016 Nissan Altima:

- **October 1, 2016 – Dallas, TX – Forward Collision Avoidance**

    TL* THE CONTACT OWNS A 2016 NISSAN ALTIMA.
    WHILE DRIVING VARIOUS SPEEDS, THE FORWARD
    EMERGENCY BRAKING WARNING INDICATOR
    ILLUMINATED AND CAUSED THE VEHICLE TO SLOW
    DOWN AND THEN STOP. THE CONTACT TOOK THE
    VEHICLE TO A DEALER, BUT THERE WAS NO
    RESOLUTION FOR THE ISSUE WITH THE EMERGENCY
    BRAKE. THE MANUFACTURER WAS NOTIFIED OF THE
    ISSUE. THE FAILURE MILEAGE WAS 7,259.

171.    Consumers have logged similar complaints regarding the 2017 Nissan Altima:

- **March 13, 2017 – Manchester, TN – Forward Collision Avoidance**

    EMERGENCY FORWARD BRAKING DOES NOT DO
    ANYTHING THAT THE NISSAN BOOK OUTLINES OR THE
    ON LINE VIDEO OUTLINES. I HAVE TWO CASE NUMBERS
    25746321 AND25772524 AND TWO DEALERSHIPS THE
    WORK REPORT SAYS NO CODE NO PROBLEM.

172.    Consumers have logged similar complaints regarding the 2018 Nissan Altima:

- **November 30, 2018 – Louisville, KY – Electrical System**

    I PURCHASED A NEW 2018 NISSAN, THE FRONT END
    COLLISION SENSOR IS ALARMING AND HAS EVER SINCE
    THE CAR WAS NEW. I HAVE TAKEN IT TO TWO
    DIFFERENT DEALERS AND THEY HAVE REFERRED ME
    TO NISSAN AND SAY THAT I SHOULD WAIT FOR THE
    RECALL. I THINK THIS IS UNACCEPTABLE AS MY CAR IS

NOT SAFE WITH THE FRONT END COLLISION NOT
WORKING PROPERLY. PLEASE HELP ME FIX THIS
PROBLEM. AS I AM DRIVING DOWN THE ROAD, THE
SENSOR ALARMS AND SAYS IT IS NOT WORKING WHEN
THERE IS NOTHING IN FRONT OF MY VEHICLE. I HAD
ONE DEALER TELL ME IT WAS PICKING UP THE
SUN......PLEASE HELP.

173.    Consumers have logged similar complaints regarding the Nissan Leaf:

- **Jun 25, 2018 - Phoenix, AZ - Forward Collision Avoidance**

    WHILE DRIVING FORWARD, THE VEHICLE SUDDENLY,
    UNEXPECTEDLY AND VIOLENTLY APPLIES THE BRAKES
    WITHOUT ANY DRIVER INPUT WHATSOEVER! THERE
    ARE NO OTHER VEHICLES OR PEDESTRIANS IN THE
    VICINITY AT THE TIME. THIS SUDDEN BRAKING
    PROBLEM BEGAN ON OR ABOUT 5/15/18 AND HAPPENED
    ON SEVERAL OCCASIONS AFTER THAT. TWICE WHILE
    ENTERING THE UNDERGROUND PARKING GARAGE AT
    AN OFFICE BUILDING AND TWICE WHILE DRIVING ON A
    CITY STREET. VEHICLE HAS BEEN AT THE LOCAL
    NISSAN DEALER FOR OVER A WEEK BUT NEITHER THE
    DEALERSHIP NOR THE MANUFACTURER APPARENTLY
    HAS ANY IDEA HOW TO FIX THE PROBLEM. THEY THINK
    THAT THERE IS A FAULT IN THE AUTOMATIC
    EMERGENCY BRAKING SYSTEM. THE SERVICE
    MANAGER TOLD ME THAT OTHER INSTANCES OF THE
    SAME ISSUE HAVE BEEN REPORTED TO NISSAN. THE
    SALESPERSON INDICATED THAT THERE WERE 4 OTHER
    SIMILAR CASES AT THEIR DEALERSHIP ALONE.THEY
    ALSO WILL NOT LET US TAKE THE VEHICLE HOME
    WITHOUT SIGNING A RELEASE OF LIABILITY
    DOCUMENT. THE OBVIOUS CONCERN IS THAT THE
    EMERGENCY BRAKING SYSTEM WILL AGAIN
    RANDOMLY ACTIVATE WHILE TRAVELING AT A
    HIGHER SPEED AND CAUSE AN ACCIDENT RESULTING
    IN SERIOUS PROPERTY DAMAGE AND INJURIES!

174.    Consumers have logged similar complaints regarding the 2018 Nissan Sentra:

- **Jul 31, 2018 - Cedar Park, TX - Forward Collision Avoidance**

    THE FRONT SENSOR KEEP SHOWING THE "FRONT
    SENSOR UNAVAILABLE" FOLLOWED BY THE CRASH
    ICON AT ALL TIMES OF THE DAY, AND ALL SPEEDS
    INCLUDING IN THE STOPPED POSITION. THE SENSOR

GOES OUT REGARDLESS OF WHETHER OR NOT THERE
ARE OTHER VEHICLES NEAR THE CAR.

175.    Consumers have logged similar complaints regarding the 2017 Nissan Pathfinder:

- **September 21, 2018 – Sarasota, FL – Forward Collision Avoidance**

    MY EMERGENCY BRAKING KEEPS SENDING ME ALERTS
    WHEN THERE IS NOTHING IN FRONT OF ME. I'M
    GETTING MESSAGES THAT THE SYSTEM IS DISABLE
    BECAUSE OF AN OBSTRUCTION. THIS HAPPENS A LOT
    OF TIMES WHEN IT'S RAINING OUT. I HAVE OPEN A
    COMPLAINT WITH NISSAN CASE NUMBER 32896677. THE
    DEALER TELLS ME RAIN CAN EFFECT THE SYSTEM.
    WHEN THE WEATHER IS BAD IS WHEN YOU NEED THE
    SYSTEM THE MOST.

176.    Consumers have logged similar complaints regarding the 2018 Nissan Pathfinder:

- **July 25, 2018 – Fort Meade, FL – Vehicle Speed Control**

    THE INTELLIGENT CRUSE CONTROL SYSTEM WORK
    INTERMINTENTLY. WHEN THIS HAPPENS THE SAFETY
    BRAKING SYSTEM DOES NOT WORK.

177.    The above complaints represent only a sampling of otherwise voluminous

complaints regarding the FEB Defect that members of the Classes have reported to Nissan

directly and through its dealers.

178.     Nissan knew the FEB Defect was present in all Class Vehicles equipped with the

FEB system, as demonstrated above, but it failed remedy the defect. Nissan's halfhearted and

unconscionable acts deprived and continues to deprive Plaintiffs and Class members of the

benefit of their bargain. Had Plaintiffs and Class members known what Nissan knew about the

FEB Defect, they would not have purchased their Class Vehicles, or certainly would have paid

less to do so.

**C.  Nissan Touted the Safety of the Class Vehicles and the Capabilities of the FEB System, Concealing the FEB Defect**

179.    Nissan's overarching marketing message for the Class Vehicles, and specifically the FEB System, was and is that creates a safe and reliable vehicle. This marketing message is false and misleading given the FEB Defect, which distracts Class Members and can cause the Class Vehicles to suddenly and unexpectedly come to a stop in the middle of the road.

180.    For example, Nissan dedicates a page on its website for the Nissan Safety Shield 360, touting "[a]ll-around protection" and, specifically, the FEB System:[16]



---

[16] https://www.nissanusa.com/safety-shield.html (last visited May 20, 2020)

181.    Nissan made similar representations throughout the class period:[17]



# NISSAN SAFETY SHIELD CONCEPT



These technologies monitor vehicle systems and the outside driving environment.

**Vehicle Dynamic Control [*]**
If VDC detects sudden over or under steer, it reduces engine power and/or applies brake pressure to individual wheels to help keep you on your steered path.

**Traction Control System**
TCS can sense drive-wheel spin and respond by reducing throttle or applying brake pressure to help maintain traction.

**Anti-lock Braking System**
In panic-braking situations the ABS rapidly pumps the brakes, helping prevent wheel lockup and helping you maintain steering control.

**Electronic Brake Force Distribution**
The EBD system sends extra force to the rear brakes when it senses additional weight in the back.

## 1. Monitor

Nissan is committed to its position as a leader in the world of automotive safety. This dedication to comprehensive safety goes into the engineering and design of every vehicle we make, and it drives the development of the Nissan Safety Shield technologies.

The Safety Shield Technologies Operate During Three Basic Phases:



**Tire Pressure Monitoring System [*]**
Using an icon on your Nissan's dash, TPMS warns you when tires aren't properly inflated.

**Lane Departure Warning [*]**
If you unintentionally stray from your lane, this system lets you know with audio and visual alerts.

**Blind Spot Warning [*]**
Indicators illuminate when the system detects a vehicle in your blind spot, and the system chimes a warning if the turn signal is activated.

**RearView Monitor [*]**
When backing-up, the RearView Monitor helps you see what's directly behind you.

**Moving Object Detection [*]**
Indicators illuminate when the system detects a vehicle in your blind spot, and the system chimes a warning if the turn signal is activated.

## 2. Respond

These technologies help you respond to potentially harmful situation.

**Around View® Monitor [*]**
This feature creates a bird's-eye view of your Nissan and displays it on the LCD monitor, so parking and backing-up are both safer and easier.

---

[17] **2015:** http://web.archive.org/web/20151225045218/http://www.nissanusa.com/blog/safety-shield-technology/ (last visited May 20, 2020); **2017:** http://web.archive.org/web/20170603034454/https://www.nissanusa.com/intelligent-mobility; and **2019:** http://web.archive.org/web/20191109081152/https://www.nissanusa.com/experience-nissan/intelligent-mobility.html

# INTELLIGENT INNOVATION THAT'S ON YOUR SIDE

Today's Nissan vehicles offer available technologies that help look out for you, and some of them CAN even take action and help you avoid trouble. The available Blind Spot Warning with available Blind Spot Intervention is just one feature in a comprehensive suite of Intelligent Safety Shield Technologies [*]



**INTELLIGENT FORWARD EMERGENCY BREAKING WITH PEDESTRIAN DETECTION**

Intelligent FEB with pedestrian detection can provide an audible and visual warning, even fully applying the brakes if necessary, when a pedestrian is detected [*]

‹ ○●●●●●● ›



**EXPERIENCE NISSAN**

VEHICLES ⌄   SHOPPING TOOLS ⌄   EXPERIENCE NISSAN ⌄   COMMERCIAL VEHICLES ⌄      SEARCH 🔍

NISSAN BLOG   NISSAN INTELLIGENT MOBILITY   NISMO® PERFORMANCE   PARTNERSHIPS   SOCIAL MEDIA

# WHAT IS NISSAN INTELLIGENT MOBILITY?

Cars that can think, communicate, learn, predict, recharge, and do it all as your partner. Nissan Intelligent Mobility is a suite of integrated technology that is designed to increase safety, comfort, and control while driving, connecting you with your vehicle and the world around you. The future of driving has arrived.



NISSAN **I**NTELLIGENT **M**OBILITY

| INTELLIGENT DRIVING | INTELLIGENT POWER | INTELLIGENT INTEGRATION |
|---|---|---|
| Feel More Confident | Feel More Excited | Feel More Connected |

Case 3:19-cv-00843   Document 133-1   Filed 06/01/20   Page 47 of 101 PageID #: 343

182.    Nissan touting the safety and reliability of the Class Vehicles and the FEB system while knowing of the FEB Defect and its gross underperformance is unfair and unconscionable.

183.    Beyond its general marketing of the Class Vehicles and the FEB System, Nissan made specific representations about the FEB system with the sale of every Class Vehicle. Specifically, the owner's manuals of many of the Class Vehicles said, "[t]he FEB system can assist the driver when there is a risk of a forward collision with the vehicle ahead in the traveling lane," and that "[t]he FEB system uses a radar sensor … located behind the front bumper to measure the distance to the vehicle ahead in the same lane." Although the manual discloses that the "FEB system does not function in all driving, traffic, weather and road conditions," the manual does not disclose that the FEB system has a defect that can cause sudden deceleration or stops even if there is not another vehicle ahead in the traffic lane. Nor does the manual disclose that the defect can cause the FEB system to deactivate regardless of "driving, traffic, weather and road conditions." The owner's manuals of other Class Vehicles said the same thing, except that it used the term "AEB system" instead of the "FEB system." However, not only did Nissan fail to disclose the FEB Defect, but the disclosures it did make were inconspicuous and were not reasonably apparent to a reasonable consumer.

184.    Although Nissan was aware of the widespread nature of the FEB Defect in the Class Vehicles, and that it posed grave safety risks, Nissan has failed to take adequate steps to notify all Class Vehicle owners of the FEB Defect and provide relief.

185.    Defendants have not recalled the Class Vehicles to repair the FEB Defect, have not initiated a customer service campaign to address the FEB Defect, have not offered Plaintiffs and the other Class members a suitable repair or replacement of parts related to the FEB Defect

free of charge, and have not reimbursed Plaintiffs and all other Class members who incurred costs for repairs related to the FEB Defect.

186.    Plaintiffs and the other Class members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

187.    Defendants have deprived Plaintiffs and the other Class members of the benefit of their bargain, exposed them all to a dangerous safety defect without any notice, and failed to repair or otherwise remedy the FEB Defect contained in the Class Vehicles. As a result of the FEB Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's FEB system and the related components are not defective and will not malfunction while operating the vehicle as it is intended to be operated and thus did not receive the benefit of their bargain, i.e., the price premium they paid attributable to the FEB system.

188.    Plaintiffs and the other Class members further expect and assume that Nissan will not sell or lease vehicles with known safety defects, such as the FEB Defect, and will fully disclose any such defect to consumers prior to purchase, or offer a suitable, non-defective, repair.

189.    Additionally, Nissan has failed to repair or replace the FEB Defect, as they obligated themselves to do in their limited warranty. Specifically, when Plaintiffs and other Class members presented their Class Vehicles for FEB Defect repair, Nissan would take a halfhearted approach and either replace the FEB system with an equally defective system or provide a software upgrade it knew would not cure the issue. In some instances, egregiously, Nissan would decline a repair, representing they could not diagnose or replicate the issue.

190.    Nissans' actions are unfair and unconscionable and place Plaintiffs and the Class

members at an elevated risk of injury or death. Namely, when the FEB Defect manifests,

Plaintiffs and Class members' vehicles come to a sudden and unexpected stop in the middle of

traffic, which increases the risk of a collision.

**C.    Nissan Received Pre-Suit Notice Multiple Times and in Multiple Ways**

204.    Nissan had extensive and exclusive notice of the FEB Defect, as detailed in

Section B, *supra*, paragraphs 159-191. Additionally, given Nissan's extensive and exclusive

knowledge of the FEB Defect, its latency, and Nissan's inability to repair it, any notice

requirement would be futile.

205.    However, Nissan also had notice of each individual Plaintiffs' claims. For

example, Plaintiffs Garneau, Housell, and Olkowski sent Defendants a letter providing pre-suit

notice and demand for corrective action concerning the defect at issue in this complaint. The

notice specifically described the defect at issue, stated the notice was being sent pursuant to

California Civil Code § 1782 and U.C.C. § 2-607(3)(A), and stated Defendants had breached

warranties and violated California, New York and Pennsylvania consumer statutes. The notice

letter further stated that it was being sent on behalf of Robert Garneau, Nancy Housell, Jeff

Olkowski, and a putative nationwide class and California subclass, New York subclass, and

Pennsylvania subclass.

206.    Additionally, Plaintiff Kerkorian served Nissan with a pre-suit notice letter on

March 21, 2019, Plaintiff Turner served Nissan with a pre-suit notice letter on December 18,

2018, Plaintiff Danner served Nissan with a pre-suit notice letter on December 4, 2019, and

Plaintiff Wright served Nissan with a pre-suit notice letter on December 16, 2019. Each

Plaintiffs' letter demands corrective actions for the FEB Defect and all available remedies, and

signifies that it is being sent pursuant to the states' consumer protection statute and the Uniform

Commercial Code on behalf of themselves individually and all others similarly situated within their state.

207.     Further, Plaintiffs Johnson, Perry, Jova, Burrows, Brueckman, Reeves, Bartlett, Fowler, Hartwell, and Huddleston each served Nissan with individual pre-suit notice letters on May 19, 2020, with receipt acknowledged on May 22, 200. Each letter demands corrective actions for the FEB Defect and all available remedies, and signifies it is being sent pursuant to the states' consumer protection statute and the Uniform Commercial Code on behalf of themselves individually and all others similarly situated within their state.

208.     In addition to other forms of notice, Nissan was put on notice of Plaintiffs' claims and had an opportunity to cure when Plaintiffs presented their vehicles to Nissan dealerships for diagnoses and repair. For example, Plaintiffs Garneau, Johnson, Perry, Jova, Wright, Burrows, Turner, Reeves, Bartlett, Danner, Hartwell, Hendrickson, Huddleston, Olkowski, and Kerkorian each have reported the FEB Defect to their Nissan dealership, but the dealership and/or Nissan have been unable to provide an adequate remedy.

## CLASS ALLEGATIONS

209.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Classes:

> All persons or entities in the United States that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Nationwide Class");

> All persons or entities in California that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "California Class");

> All persons or entities in Florida that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped

with Automatic Emergency Braking or Forward Emergency Braking (the "Florida Class");

All persons or entities in Georgia that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Georgia Class");

All persons or entities in Illinois that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Illinois Class");

All persons or entities in Massachusetts that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Massachusetts Class");

All persons or entities in Michigan that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Michigan Class");

All persons or entities in Missouri that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Missouri Class");

All persons or entities in Mississippi that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Mississippi Class");

All persons or entities in New Jersey that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "New Jersey Class");

All persons or entities in New York that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "New York Class");

All persons or entities in North Carolina that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "North Carolina Class");

All persons or entities in Ohio that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Ohio Class");

All persons or entities in Pennsylvania that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Pennsylvania Class");

All persons or entities in Texas that purchased, lease, leased, own or owned a 2015-present Nissan or Infiniti vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Texas Class").

210.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint, or narrowed at class certification.

211.    Specifically excluded from the Classes are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

212.    **Numerosity.** The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of individuals that are members of the proposed Classes. Although the precise number of proposed members are unknown to Plaintiffs, the true number of members of each of the Classes is known by Defendants. More specifically, Nissan and its network of authorized dealers maintains databases that contain the following information: (i) the name of each Class member that leased

or purchased a vehicle; and (ii) the address of each Class member. Thus, members of the proposed Classes may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

213.    **Typicality.** The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all other members of the Classes, paid for Class Vehicles designed, manufactured, and distributed by Defendants which is afflicted by the FEB Defect. The representative Plaintiffs, like all other members of the Classes, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing this malfunctioning FEB system and related parts as a result of the FEB Defect. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Classes.

214.    **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Class Vehicles suffer from the FEB Defect;

(b)    Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c)    Whether the FEB Defect constitutes an unreasonable safety hazard;

(d)    Whether Defendants knew or should have known about the FEB Defect and, if so, how long Defendants have known of the FEB Defect;

(e)    Whether Defendants had a duty to disclose that the Class Vehicles suffer from the FEB Defect;

(f)    Whether Defendants breached their duty to disclose that the Class Vehicles suffer from the FEB Defect;

(g)     Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the FEB Defect;

(h)     Whether Defendants negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the FEB Defect;

(i)     Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the FEB Defect;

(j)     Whether members of the Classes would have paid less for the Class Vehicles if Defendants, at the time of purchase or lease, disclosed that the vehicles suffered from the FEB Defect;

(k)     Whether Defendants are liable to Plaintiffs and the Classes for breaching their express and/or implied warranties;

(l)     Whether Defendants are liable to Plaintiffs and the Classes for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and/or any other statutory duties under state laws;

(m)     Whether Defendants violated applicable state consumer protection statutes;

(n)     Whether Defendants have been unjustly enriched; and

(o)     Whether Plaintiffs and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

215.     **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Classes.

216.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed

against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

217.    In the alternative, the Classes may also be certified because:

    (a)    the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

    (b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    (c)    Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT 1
### Fraudulent Omission
(On behalf of Plaintiffs and the proposed Classes)

218.    Plaintiffs incorporate and reallege each of the preceding paragraphs as though fully set forth herein.

219.    Plaintiffs bring this count on behalf of themselves and the other Class members.

220.    Defendants intentionally and knowingly falsely concealed, suppressed, and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the FEB system in the Class Vehicles is defective, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiffs and the other members of the Classes rely on Defendants' omissions. As a direct result of Defendants' fraudulent conduct, Plaintiffs and the other members of the Classes have suffered actual damages.

221.    As a result of Defendants' failure to disclose to Plaintiffs and the other members of the Classes the material fact that the FEB system in the Class Vehicles is defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the FEB Defect or sell their vehicles at a substantial loss. The fact that the FEB system in the Class Vehicles is defective is material because no reasonable consumer expects that she or she will have to spend thousands of dollars for diagnosis, repair or replacement of the FEB Defect, and because Plaintiffs and the other members of the Classes had a reasonable expectation that the vehicles would not suffer from the FEB Defect.

222.    The fact that the FEB system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. Because of the FEB Defect, the Class Vehicles may suddenly brake automatically while driving in traffic. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents caused by the FEB Defect, and the general public is also at risk for being involved in an accident with a Class Vehicle. Plaintiffs and the other members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the FEB Defect, or would have paid less for the Class Vehicles.

223. Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the FEB Defect would sell more Class Vehicles.

224. Despite notice of the FEB Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class members the costs they incurred relating to diagnosing and repairing the FEB Defect or for the premium price that they paid for the FEB feature.

225. At minimum, Defendants knew about the FEB Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. As such, Defendants acted with malice, oppression and fraud. Plaintiffs and the other members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the FEB Defect, Plaintiffs and the other members of the Classes have suffered actual damages in an amount to be determined at trial.

**COUNT 2**
**Breach of Express Warranty**
(On behalf of Plaintiffs and the proposed Classes)

226. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

227. Plaintiffs bring this count on behalf of themselves and the other Class members.

228. Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and the other Class members' decisions to purchase or lease the Class Vehicles.

229. Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

230. With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

231. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

232. In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan." Under warranties provided to Plaintiffs and the other members of the Classes, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the Class Vehicles.

233. Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the other members of the Classes purchased or leased their Class Vehicles.

234. Despite the existence of the warranties, Defendants failed to inform Plaintiffs and the other members of the Classes that the Class Vehicles contained the FEB Defect, and, thus, wrongfully transferred the costs of repair or replacement of the FEB Defect to Plaintiffs and the other members of the Classes.

235.     Defendants have failed to provide Plaintiffs or the other members of the Classes with a meaningful remedy for the FEB Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

236.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

237.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the other members of the Classes have been damaged in an amount to be determined at trial.

238.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and the other members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT 3**
**Breach of Implied Warranty**
(On behalf of Plaintiffs and the proposed Classes)

239.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

240.     Plaintiffs bring this count on behalf of themselves and the other members of the Classes.

241.     Plaintiffs and the other members of the Classes purchased or leased the Class

Vehicles from Defendants by and through their authorized agents for retail sales, or were

otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third

party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or

sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which

the Class Vehicles were purchased or leased.

242.     Defendants are and were at all relevant times merchants and sellers of motor

vehicles as defined under the Uniform Commercial Code.

243.     With respect to leases, Defendants are and were at all relevant times lessors of

motor vehicles as defined under the Uniform Commercial Code.

244.     The Class Vehicles are and were at all relevant times goods within the meaning

of the Uniform Commercial Code.

245.     Defendants impliedly warranted that the Class Vehicles were in merchantable

condition and fit for the ordinary purpose for which vehicles are used.

246.     The Class Vehicles, when sold or leased and at all times thereafter, were not in

merchantable condition and are not fit for the ordinary purpose of providing safe and reliable

transportation. The Class Vehicles contain the FEB Defect and present an undisclosed safety

risk to drivers and occupants. Thus, Defendants breached their implied warranty of

merchantability.

247.     As described at length above in Section C, paragraphs 204-208, Defendants were

provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a

reasonable opportunity to cure their breach of written warranties. Any additional time to do so

would be unnecessary and futile because Defendants have known of and concealed the FEB

Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

248.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other members of the Classes have been damaged in an amount to be proven at trial.

## COUNT 4
### Violation of the Magnuson-Moss Warranty Act
(On behalf of Plaintiffs and the proposed Classes)

249.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

250.    Plaintiffs bring this count on behalf of themselves and the other members of the Nationwide Class.

251.    Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

252.    Plaintiffs and the other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

253.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

254.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

255.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

256.    Defendants provided Plaintiffs and the other members of the Nationwide Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any

repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan."

257.    Under warranties provided to Plaintiffs and the other members of the Nationwide Class, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the Class Vehicles. However, Defendants have failed to provide owners with a remedy to the FEB Defect.

258.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

259.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the FEB Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the FEB Defect.

260.    Plaintiffs and the other members of the Nationwide Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and the other members of the Nationwide Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each other member of the Nationwide Class are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the

warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessors of the Class Vehicles only.

261.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the FEB Defect, but failed to remediate the same. Likewise, Defendants failed to disclose the FEB Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

262.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

263.     Plaintiffs, individually and on behalf of the other members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT 5**
**Unjust Enrichment**
(On behalf of Plaintiffs and the proposed Classes)

264.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

265.     Plaintiffs bring this count on behalf of themselves and the other members of the Classes.

266.     The unjust enrichment claim of Plaintiff Kerkorian and the other Texas Class members is alternatively denominated a claim for "money had and received." Under Texas law, it is the same thing as a claim for unjust enrichment

267.     Plaintiffs and the other members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles. Defendants were and should have been reasonably expected to provide Class Vehicles free from the FEB Defect.

268.     Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the FEB Defect in the Class Vehicles.

269.     As a proximate result of Defendants' false representations, omissions and concealment of the FEB Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and the other members of the Classes. It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and the other members of the Classes.

270.     There is a direct relationship between Defendants on the one hand, and Plaintiffs and the other class members on the other, sufficient to support a claim for unjust enrichment. Defendants, acting in concert, failed to disclose the FEB Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, Defendants knew that disclosure of the FEB Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Defendants' brand among Plaintiffs and the other Class members. Defendants also knew their concealment and suppression of the FEB Defect would discourage Plaintiffs and the other Class members from seeking replacement or

repair concerning the FEB Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

271.    Plaintiffs and the other members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

272.    Plaintiffs and the other members of the Classes seek an order requiring Defendants' to disgorge their gains and profits to Plaintiffs and the other members of the Classes, together with interest, in a manner to be determined by the Court.

**COUNT 6**
**Violation of California's Consumer Legal Remedies Act,**
**(Cal. Civil Code § 1750 *et seq.*)**
(On behalf of the California Plaintiff and proposed Class)

273.    Plaintiff Garneau ("Plaintiff" for purposed of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

274.    Plaintiff brings this claim on behalf of himself and the other members of the California Class ("Class" for purposes of this Count).

275.    NNA is a "person" as defined by California Civil Code § 1761(c). NMC is a "person" as defined by California Civil Code § 1761(c).

276.    Plaintiff and the other Nationwide Class and California Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

277.    By failing to disclose and concealing the defective nature of the Class Vehicles' FEBs from Plaintiff and the other members of the Class, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or

grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

278.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

279.    Defendants knew that the Class Vehicles' FEB systems suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

280.    Defendants were under a duty to Plaintiff and the other members of the Class to disclose the defective nature of the Class Vehicles' FEB systems and/or the associated repair costs because: a) Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' FEBs; b) Plaintiff and the other members of the Nationwide Class and California Class could not reasonably have been expected to learn or discover that their FEBs have a dangerous safety defect until after they purchased the Class Vehicles; and c) Defendants knew that Plaintiff and the other members of the Nationwide Class and California Class could not reasonably have been expected to learn about or discover the FEB Defect.

281.    By failing to disclose the FEB Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

282.    The facts concealed or not disclosed by Defendants to Plaintiff and the other members of the Class are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiffs and the other members of the Nationwide Class and California Class known

that the Class Vehicles' FEBs were defective, they would not have purchased the Class Vehicles or would have paid less for them.

283.     Plaintiff and the other members of the Nationwide Class and California Class are reasonable consumers who do not expect that their vehicles will suffer from a FEB Defect. That is the reasonable and objective consumer expectation for vehicles and their FEB systems.

284.     As a result of Defendants' misconduct, Plaintiff and the other members of the Nationwide Class and California Class have been harmed and have suffered actual damages in that the Class Vehicles and their FEB systems are defective and require repairs or replacement.

285.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other members of the Nationwide Class and California Class have suffered and will continue to suffer actual damages.

286.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

287.     Plaintiff seeks all available relief under the CLRA for all violations complained of herein, including, but not limited to, damages, punitive damages, attorneys' fees and cost and any other relief that the Court deems proper.

288.     Accordingly, Plaintiff and the other members of the Class seek an order enjoining the acts and practices described above.

**COUNT 7**
**Violation of California's Unfair Competition Law ("UCL")**
(Cal. Bus. & Prof. Code § 17200)
(On behalf of the California Plaintiff and proposed Classes)

289.    Plaintiff Garneau ("Plaintiff" for purposed of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

290.    Plaintiff brings this claim on behalf of himself and the other members of the California Class ("Class" for purposes of this Count).

291.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

292.    Defendants knew that the Class Vehicles' FEB systems suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

293.    In failing to disclose the FEB Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

294.    Defendants were under a duty to Plaintiff and the other members of the Class to disclose the defective nature of the Class Vehicles' FEB systems because: a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' FEB systems; b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' FEB systems; and c) Defendants actively concealed the defective nature of the Class Vehicles' FEB systems from Plaintiffs and the other Class Members at the time of sale and thereafter.

295.    The facts concealed or not disclosed by Defendants to Plaintiff and the other members of the Class are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them. Had Plaintiff and the other members of the Class known that the Class Vehicles suffered from the FEB Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

296.    Defendants continued to conceal the defective nature of the Class Vehicles and their FEB systems even after Plaintiff and the other members of the Class began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

297.    Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also assert a violation of public policy arising from Defendants' withholding of material safety facts from consumers. Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

298.    Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

299.    Thus, by their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

300. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

301. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

302. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other members of the Class have suffered and will continue to suffer actual damages.

303. Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the other members of the Class pursuant to sections 17203 and 17204 of the Business & Professions Code.

## COUNT 8
### Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. §§ 502.201, *et seq.*)
(On behalf of the Florida Plaintiffs and proposed Classes)

304. Plaintiffs Johnson, Perry, and Jova ("Plaintiffs" for purposes of this Count) hereby incorporate by reference each preceding paragraph as though fully set forth herein.

305. Plaintiffs bring this claim individually and on behalf of the other members of the Florida Class ("Class" for purposes of this Count).

306. The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201, *et seq.*, states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

307. By the conduct described in detail above and incorporated herein, Nissan engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

308. Nissan's omissions regarding the FEB Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

309. Nissan intended for Plaintiffs Johnson and Perry and the other Florida Class members to rely on Nissan's omissions regarding the FEB Defect.

310. Plaintiffs Johnson and Perry, and the other Florida Class members, justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect, as evidenced by Plaintiff and the other Florida Class members' purchases of Class Vehicles.

311. Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff and the other Florida Class members, Plaintiffs Johnson and Perry and the other Florida Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

312. Nissan's omissions have deceived Plaintiffs Johnson and Perry, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Florida Class.

313. In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiffs Johnson and Perry and the other Florida Class members Class Vehicles with defective FEB systems that are essentially unusable for the

purposes for which they were sold. The injuries to Plaintiffs Johnson and Perry and the other Florida Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs Johnson and Perry and the other Florida Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiffs Johnson and Perry or the other Florida Class members could have reasonably avoided.

314.    As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

315.    As a direct and proximate result of Nissan's unfair and deceptive trade practices, Plaintiffs Johnson and Perry and the other Florida Class members have suffered ascertainable loss and actual damages. Plaintiffs Johnson and Perry and the other Florida Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiffs Johnson and Perry and the other Florida Class members also suffered diminished value of their vehicles. Plaintiffs Johnson and Perry and the other Florida Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201, *et seq.*

**COUNT 9**
**Violations of Georgia's Fair Business Practices Act**
**(Ga. Stat. Ann. §§ 10-1-390,** *et seq.*)
(On behalf of the Georgia Plaintiff and proposed Classes)

316.    Plaintiff Wright ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

317.    Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

318.    The Georgia Fair Business Practices Act, Ga. Stat. Ann. § 10-1-393, states that, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

319.    By the conduct described in detail above and incorporated herein, Nissan engaged in unfair and deceptive trade practices.

320.    Nissan's omissions regarding the FEB Defect, described above, which can result in sudden and unexpected braking on roadways, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

321.    Nissan intended for Plaintiff and the other Class members to rely on Nissan's omissions regarding the FEB Defect.

322.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect that can result in sudden and unexpected braking on roadways, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

323.     Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

324.     Nissan's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

325.     In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiff and the other Class members Class Vehicles with defective Forward Emergency Braking Systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

326.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

327.     As a direct and proximate result of Nissan's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not

have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ga. Stat. Ann. § 10-1-399.

## COUNT 10
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. 505/1, *et seq.*)
(On behalf of the Illinois Plaintiffs and proposed Classes)

328. Plaintiff Burrows ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

329. Plaintiff brings this claim individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

330. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, states that, "[u]nfair methods of competition and unfair or deceptive acts or practices . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

331. By the conduct described in detail above and incorporated herein, Nissan engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

332. Nissan's omissions regarding the FEB Defect, described above, which can cause sudden and unexpected braking on roadways, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

333. Nissan intended for Plaintiff and the other Class members to rely on Nissan's omissions regarding the FEB Defect.

334. Plaintiff and the other Class members justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect that can result in sudden and unexpected braking, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

335. Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

336. Nissan's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

337. In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiffs and the other Class members Class Vehicles with defective Forward Emergency Braking systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

338. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so

would be unnecessary and futile because Defendants have known of and concealed the FEB

Defect and, on information and belief, have refused to repair or replace the FEB Defect free of

charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

339.     As a direct and proximate result of Nissan's unfair and deceptive trade practices,

Plaintiff and the other Class members have suffered ascertainable loss and actual damages.

Plaintiff and the other Class members who purchased or leased the Class Vehicles would not

have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had

the truth about the FEB Defect been disclosed. Plaintiff and the other Class members also

suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to

recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill

Comp. Stat. 505/1, *et seq.*

**COUNT 11**
**Violations of The Massachusetts**
**Regulation of Business Practices for Consumer Protection Act**
**(Mass Gen. Laws ch. 93A, §§ 1, *et seq.*)**
(On behalf of the Massachusetts Plaintiff and proposed Classes)

225.     Plaintiff Turner ("Plaintiff" for purposes of this Count) incorporates by reference

each preceding paragraph as though fully set forth herein.

226.     Plaintiff brings this Count individually and on behalf of the other members of the

Massachusetts Class (the "Class," for purposes of this Count).

227.     The Massachusetts Regulation of Business Practices for Consumer Protection Act

("Massachusetts Consumer Protection Act") prohibits "[u]nfair methods of competition and

unfair or deceptive practices in the conduct of any trade or commerce. . . ." Mass Gen. Laws ch.

93A, § 2.

228.     By the conduct described in detail above and incorporated herein, Nissan engaged

in unfair or deceptive acts in violation of Mass Gen. Laws ch. 93A, § 2.

229.     Nissan's omissions regarding the FEB Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

230.     Nissan intended for Plaintiff and the other Class members to rely on Nissan's omissions regarding the FEB Defect.

231.     Plaintiff and the other Class members justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

232.     Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

233.     Nissan's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

234.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

235.     As a direct and proximate result of Nissan's deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased

or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the Massachusetts Consumer Protection Act.

## COUNT 12
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws § 445.903, *et seq.*)
(On behalf of the Michigan Plaintiff and the proposed Classes)

236. Plaintiff Brueckman ("Plaintiff," for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

237. Plaintiff brings this claim on behalf of himself and the Michigan Class ("Class" for purposes of this Count).

238. Class Members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

239. At all relevant times hereto, Nissan was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

240. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1). Nissan engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have… characteristics… that they do not have.…;" "(e) Representing that goods or services are of a particular standard… if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or

statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). By failing to disclose and actively concealing the defective Forward Emergency Braking System in the Class Vehicles, Nissan both participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

241.     In the course of their business, Nissan willfully failed to disclose and actively concealed the FEB Defect in the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Nissan also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentation or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Nissan is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Michigan CPA.

242.     As alleged above, Nissan knew of the FEB Defect, and the Class was deceived by Nissan's omissions into believing the Class Vehicles were safe. The true information could not have reasonably been known by the consumer.

243.     795. Nissan knew or should have known that their conduct violated the Michigan CPA.

244.     As alleged above, Nissan made material statements about the safety and reliability of Class Vehicles that were either false or misleading.

245.     Nissan engaged in a deceptive trade practice when it failed to disclose material information concerning the Class Vehicles which it knew at the time of the sale. Nissan

deliberately withheld the information about the propensity for the FEB defect to cause sudden and unexpected braking on roadways in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

246.     Nissan owed the Class an independent duty, based on its respective knowledge, to disclose the defective nature of Class Vehicles, including the propensity for the FEB system to cause sudden and unexpected braking, because Nissan: (1) possessed exclusive knowledge of the defect rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles; (2) intentionally concealed the hazardous situation with Class Vehicles through their deceptive marketing designed to hide the FEB systems problems from Plaintiffs; (3) and/or made incomplete representations about the safety and reliability of Class Vehicles generally, and the FEB system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

247.     Nissan's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Michigan Class, about the true safety and reliability of Class Vehicles. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead the Class.

248.     The propensity of the Class Vehicles' FEB system causing sudden and unexpected braking during operation was material to the Class. Had the Class known that their vehicles had this serious safety defect, they would either not have purchased their Class Vehicles, or would have paid less for them than they did.

249.     The Class suffered ascertainable loss caused by Nissan's failure to disclose material information. The Class overpaid for their vehicles and did not receive the benefit of their bargain. As the result of the concealment and failure to remedy the serious safety defect, the

value of their Class Vehicles has diminished now that the FEB Defect in the Class Vehicles has come to light, and the Class owns vehicles that are defective and unsafe.

250. The Class has been damaged by Nissan's misrepresentations, concealment, and non-disclosure of the FEB Defect in the Class Vehicles, as they are now holding vehicles whose value has greatly diminished because of Nissan's failure to timely disclose and remedy the serious defects.

251. Class Members were—and continue to be—at risk of irreparable injury as a result of Nissan's acts and omissions in violation of the Michigan CPA, and these violations present a continuing risk to the Class as well as to the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

252. As a direct and proximate result of Nissan's violations of the Michigan CPA, the Class has suffered injury-in-fact and/or actual damage.

253. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

254. The Class seeks injunctive relief to enjoin Nissan from continuing its unfair and deceptive acts; monetary relief against Nissan measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Class Member; reasonable attorneys' fees; declaratory relief in the nature of a judicial determination of whether each Company's conduct violated the Michigan Statute, the just total

amount of penalties to be assessed against each thereunder, and the formula and procedure for

fair and equitable allocation of statutory penalties among the Michigan Class; and any other just

and proper relief available under Mich. Comp. Laws § 445.911.

255.     The Class also seeks punitive damages against Nissan because it carried out

despicable conduct with willful and conscious disregard of the rights and safety of others. Nissan

intentionally and willfully misrepresented the safety and reliability of Class Vehicles, deceived

Class Members, and concealed material facts that only it knew, all to avoid the expense and

public relations nightmare of correcting flaws in the Class Vehicles it repeatedly promised Class

Members were safe. Nissan's unlawful conduct constitutes malice, oppression, and fraud

warranting punitive damages.

**COUNT 13**
**Missouri Merchandising Practices Act**
**(Mo. Rev. Stat. §§ 407.010, *et seq.*)**
(On behalf of the Missouri Plaintiffs and the proposed Classes)

256.     Plaintiffs Reeves and Bartlett ("Plaintiffs" for purposes of this Count) incorporate

by reference each preceding paragraph as though fully set forth herein.

257.     Plaintiffs bring this claim individually and on behalf of the other members of the

Missouri Class ("Class" for purposes of this Count).

258.     Nissan, Plaintiffs, and the other Class members are "persons" within the meaning

of Mo. Rev. Stat. § 407.010(5).

259.     Nissan engaged in "trade" or "commerce" in the State of Missouri within the

meaning of Mor. Rev. Stat. § 407.010(7).

260.     The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful

"the act, use or employment by any person of any deception, fraud, false pretense,

misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

261.    In the course of Nissan's business, it willfully failed to disclose and actively concealed the FEB Defect, described above. Accordingly, Nissan used or employed deception and fraud, and concealed, suppressed and omitted a material fact in connection with the sale or advertisement of merchandise in trade or commerce, in violation of the Missouri MPA. Nissan's conduct offends public policy; is unethical and unscrupulous; and presents a risk of, or causes, substantial injury to consumers.

262.    Nissan's omissions regarding the FEB Defect, described above, are material facts that a reasonable person would have considered in deciding to purchase (or pay the same price for) the Class Vehicles.

263.    Nissan intended for Plaintiffs and the other Class members to rely on Nissan's omissions of fact regarding the Sliding Door Defect.

264.    Plaintiffs and the other Class members were injured by Nissan's omissions of fact concerning the above-described FEB Defect, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

265.    Had Nissan disclosed all material information regarding the FEB Defect to Plaintiffs and the other Class members, Plaintiffs and reasonable consumers would not have purchased or leased Class Vehicles or would have paid less to do so.

266.    Nissan's omissions deceived Plaintiffs Reeves, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

267. In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiffs and the other Class members Class Vehicles with defective FEB systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

268. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

269. As a direct and proximate result of Nissan's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Mo. Rev. Stat. § 407.025.

## COUNT 14
### Violations of the North Carolina
### Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. §§ 75-1.1, *et seq.*)
#### (On behalf of the North Carolina Plaintiff and the proposed Classes)

270.    Plaintiff Fowler ("Plaintiff," for purposes of the North Carolina Class's claims) incorporates by reference each preceding paragraph as though fully set forth herein.

271.    Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

272.    Nissan engaged in unlawful, unfair, and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by advertising, selling, and warranting the defective Class Vehicles.

273.    Nissan knew that the Class Vehicles suffered from the FEB Defect that can result in sudden and unexpected braking during operation.

274.    In advertising, selling, and warranting the Class Vehicles, Nissan omitted material facts concerning the FEB Defect that can result in sudden and unexpected braking engine damage. Nissan failed to give Plaintiff and the other Class members sufficient notice or warning regarding this defect.

275.    Nissan intended that Plaintiff and the other Class members rely upon Nissan's omissions when purchasing the Class Vehicles.

276.    Plaintiff and the other Class members were deceived by Nissan's concealment of the defect.

277.    Nissan's conduct was in commerce and affected commerce.

278.    As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so

would be unnecessary and futile because Defendants have known of and concealed the FEB

Defect and, on information and belief, have refused to repair or replace the FEB Defect free of

charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

279.    As a direct and proximate result of these unfair, willful, unconscionable, and

deceptive commercial practices, Plaintiff and the other Class members have been damaged and

are entitled to recover actual and treble damages, as well as attorneys' fees and costs, and all

other relief allowed under N.C. Gen. Stat §§ 75-16 and 75-16.1.

**COUNT 15**
**Violations of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §§ 56:8-1,** *et seq.***)**
(On behalf of the New Jersey Plaintiff and the proposed Classes)

280.    Plaintiff Hartwell ("Plaintiff," for purposes of the New Jersey Class's claims)

incorporates by reference each preceding paragraph as though fully set forth herein.

281.    Plaintiff brings this Count individually and on behalf of the other members of the

New Jersey Class (the "Class," for purposes of this Count).

282.    Pursuant to the New Jersey Consumer Fraud Act, "[t]he act, use or employment

by any person of any unconscionable commercial practice, deception, fraud, false pretense, false

promise, misrepresentation, or the knowing, concealment, suppression, or omission of any

material fact with intent that others rely upon such concealment, suppression or omission, in

connection with the sale or advertisement of any merchandise or real estate . . . is declared to be

an unlawful practice. . . ." N.J. Stat. Ann. § 56:8-2. 1090. By the conduct described in detail

above and incorporated herein, Nissan engaged in unfair or deceptive acts in violation of N.J.

Stat. Ann. § 56:8-2.

283.    Nissan's omissions regarding the FEB Defect, described above, that can result in

sudden and unexpected braking during operation, are material facts that a reasonable person

would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

284.    Nissan intended for Plaintiff and the other Class members to rely on Nissan's omissions of fact regarding the FEB Defect.

285.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect that can result in sudden and unexpected braking during operation, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

286.    Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff

287.    and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

288.    Nissan's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

289.    In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiff and the other Class members' Class Vehicles with defective FEB systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

290. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

291. As a direct and proximate result of Nissan's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under N.J. Stat. Ann. §§ 56:8-2, *et seq.*

## COUNT 16
### Deceptive Acts or Practices
### (New York GBL § 349)
(On behalf of the New York Plaintiff and the proposed Classes)

292. Plaintiff Housell ("Plaintiff" for purpose of this Count) incorporate by reference each preceding paragraph as though fully set forth herein.

293. Plaintiff brings this claim individually and on behalf of the other members of the New York Class ("Class" for purposes of this Count).

294. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making misrepresentations concerning the FEB Defect.

295. The foregoing deceptive acts and practices were directed at consumers.

296.    The foregoing deceptive acts and practices are misleading in a material way because, in the course of Defendants' business, they willfully failed to disclose and actively concealed the FEB Defect as described above. Further, Defendants misrepresented the true nature of the Class Vehicles. Accordingly, Defendants made untrue, deceptive or misleading representations of material facts and omitted and/or concealed material facts.

297.    Defendants engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Defendants at the time of the sale. Defendants deliberately withheld the information about the FEB defect in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

298.    The reliability of the Class Vehicles, and the FEB systems, were material to Plaintiff and the other members of the Class. Had Plaintiff and the other members of the Class known that their Class Vehicles had the FEB Defect, they would not have purchased the Class Vehicles, or would have done so on materially different terms.

299.    Because Defendants' deception takes place in the context of automobile safety, that deception affects the public interest.

300.    Defendants' unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

301.    Plaintiff and the other members of the Class suffered injury caused by Defendants' failure to disclose material information. Plaintiff and the other members of the Class overpaid for their vehicles and did not receive the benefit of their bargain. The defective Class Vehicles do not operate reliably and pose a grave safety threat. The value of the Class Vehicles has diminished now that the FEB system defect has to light, and Plaintiff and the other

members of the Class own vehicles that are not safe. Further, Plaintiff and the other members of the Class did not receive the benefit of their bargain in that they paid a price premium for a safety feature that was in reality a safety hazard.

302. As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

303. On behalf of themselves and other members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT 17**
**Ohio Consumer Sales Practices Act**
**(Ohio Rev. Code Ann. §§ 1345.01,** *et seq.***)**
(On behalf of the Ohio Plaintiff and the proposed Classes)

304. Plaintiff Huddleston ("Plaintiff," for purposes of the Ohio Class's claims) incorporates by reference each preceding paragraph as though fully set forth herein.

305. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

306. Nissan, Plaintiff, and the other Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 145.01(B). Nissan is a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(c).

307.     Plaintiff and the other Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase and lease of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

308.     Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions.

309.     In the course of Nissan's business, Nissan violated the Ohio Consumer Sales Practices Act ("CSPA") by selling Class Vehicles with the FEB Defect, which can cause sudden or unexpected braking, or negligently concealing or suppressing material facts concerning the FEB Defect in the Class Vehicles.

310.     Further, as a result of placing a defective product into the stream of commerce, Nissan has breached its implied warranty in tort, which is an unfair and deceptive act, as defined in Ohio Rev. Code Ann. § 1345.09(B).

311.     Nissan has committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the Class Vehicles with the FEB Defect.

312.     Moreover, Nissan has committed an unfair and deceptive act by knowingly concealing the FEB Defect in the Class Vehicles and failing to inform Plaintiff and the other Class members of this defect.

313.     Nissan's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

314.     Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct result of Nissan's concealment of and failure to disclose material information, namely, the FEB Defect. Plaintiff and the other Class members who purchased or

leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles.

315.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

316.     Nissan is liable to Plaintiff and the other Class members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code Ann. § 1345.09.

## COUNT 18
### Pennsylvania's Trade Practices and Consumer Protection Law
### (73 P.S. 201-1, *et seq.*)
(On behalf of the Pennsylvania Plaintiff and proposed Class)

317.      Plaintiff Olkowski ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

318.     Plaintiff brings this claim individually and on behalf of the other members of the Pennsylvania Class ("Class" for purposes of this Count).

319.     Defendants' practices, acts, policies and course of conduct, as described above, constitute unfair conduct because they (1) offend public policy; (2) are immoral, unethical, oppressive and unscrupulous; and (3) cause substantial injury to consumers in violation of the Pa. UTPCPL.

320.     Defendants, either directly or through their agents, concealed, suppressed and omitted to Plaintiff and the other Class members at the time of purchase or lease, that the Class Vehicles suffered from the FEB Defect. Plaintiff and the other Class members would not have bought the vehicles, or would have paid less for them, if Defendants had disclosed the FEB Defect.

321.     Defendants knew about the FEB Defect, but did not correct it or disclose it to Plaintiff or the other Class members.

322.     Defendants' concealment and omissions were material.

323.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

324.     Defendants' concealment and omissions occurred in the course of conduct involving trade or commerce. Defendants' conduct caused Plaintiff and the other Class members to suffer ascertainable losses of money and property in that they were misled into expending additional sums of money at its dealerships and elsewhere in the purchase or lease of the Class Vehicles after having been misled about the presence of the FEB Defect. Defendants did so despite having prior knowledge of the defect when they placed said vehicles into the stream of commerce. Plaintiff also seeks a declaration that Class Vehicles are defective, and owners and lessees of the Class Vehicles must be compensated, refunded, and/or have their vehicles replaced with others that do not suffer from the FEB Defect.

## COUNT 19
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code §§ 17.01, *et seq.*)
#### (On behalf of the Texas Plaintiff and proposed Class)

325.    Plaintiff Kerkorian ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

326.    Plaintiff brings this count individually and on behalf of the Texas Class ("Class" for purposes of this Count).

327.    The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

328.    By the conduct described in detail above and incorporated herein, Nissan engaged in false, misleading and deceptive trade practices.

329.    Nissan's omission of the FEB Defect, described above, that results in phantom braking and/or false activation, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

330.    Nissan intended for Plaintiff and the other Class members to rely on Nissan's omissions regarding the FEB Defect.

331.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Nissan's omissions of fact concerning the above-described FEB Defect that results in phantom braking and/or false activation, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

332.    Had Nissan disclosed all material information regarding the FEB Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

333.     Nissan's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

334.     In addition to being deceptive, the business practices of Nissan were unfair because Nissan knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Nissan's exclusive knowledge of the FEB Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

335.     As described at length above in Section C, paragraphs 204-208, Defendants were provided extensive pre-suit notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

336.     As a direct and proximate result of Nissan's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the FEB Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the other members of the Classes as follows:

A.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class members;

B.     For an order finding in favor of Plaintiffs and the other Class members on all counts asserted herein;

C.     For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For injunctive relief enjoining the illegal acts detailed herein;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief; and

G.     For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 1, 2020                Respectfully submitted,

By: /s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR 23045)
Benjamin A. Gastel (BPR 28699)
BRANSTETTER, STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: 615-254-8801
Fax: 615-255-5419
Email: gerards@bsjfirm.com
beng@bsjfirm.com

L. Timothy Fisher (pro hac vice)
Joel D. Smith (pro hac vice)
Frederick J. Klorczyk III (pro hac vice)
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, California 94596

Tel: (925) 300-4455
E-Mail:  ltfisher@bursor.com
        jsmith@bursor.com
        fklorczyk@bursor.com

W. Daniel "Dee" Miles, III (pro hac vice)
H. Clay Barnett, III (pro hac vice)
J. Mitch Williams (pro hac vice)
BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
MILES, P.C.
272 Commerce Street
Montgomery, Alabama  36104
Tel: (334) 269-2343
E-Mail:  dee.miles@beasleyallen.com
        clay.barnett@beasleyallen.com
        mitch.williams@beasleyallen.com

Adam J. Levitt (pro hac vice)
John E. Tangren (pro hac vice)
Daniel R. Ferri (pro hac vice)
DICELLO LEVITT GUTZLER LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Tel: (312) 214-7900
E-Mail:  alevitt@dicellolevitt.com
        jtangren@dicellolevitt.com
        dferri@dicellolevitt.com

Benjamin L. Bailey (pro hac vice)
Jonathan D. Boggs (pro hac vice)
Michael L. Murphy (pro hac vice)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia  25301
Tel: (304) 345-6555
E-Mail:  bbailey@baileyglasser.com
        jboggs@baileyglasser.com

Michael L. Murphy (pro hac vice)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-Mail:  mmurphy@baileyglasser.com

Daniel A. Schlanger (pro hac vice)
SCHLANGER LAW GROUP LLP
9 East 40th Street, Suite 1300
New York, New York  10016
Tel: (212) 500-6114

98

E-Mail:  dschlanger@consumerprotection.net

Brian K. Herrington (pro hac vice)
SCHLANGER LAW GROUP LLP
602 Steed Road, Suite 100
Ridgeland, Mississippi  39157
Tel: (601) 208-0013
E-Mail:  bherrington@consumerprotection.net

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, a true and correct copy of the foregoing document was served on counsel listed below via the Court's CM/ECF system.

Jaimie Mak
Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
Email: jmak@richmanlawgroup.com

Kim E. Richman
Richman Law Group
8 W. 126th St.
New York, NY 10027
Email: krichman@richmanlawgroup.com

Lynn A. Toops
Lisa M. La Fornara
Cohen & Malad, LLP
One Indiana Square
Suire 1400
Indianapolis, IN 46204
Email: ltoops@cohenandmalad.com
Email: llafornara@cohenandmalad.com

Anthony F. Schlehuber
Brigid M. Carpenter
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Nash)
211 Commerce Street
Suite 800
Nashville, TN 37201
Email: aschlehuber@bakerdonelson.com
Email: bcarpenter@bakerdonelson.com

E. Paul Cauley , Jr.
S. Vance Wittie
Faegre Drinker, Biddle & Reath, LLP (Dallas Office)
1717 Main Street, Suite 5400
Dallas, TX 75201
Email: paul.cauley@faegredrinker.com
Email: Vance.Wittie@faegredrinker.com

Matthew Jacob Adler
Paul Jeffrey Riehle
Faegre Drinker Biddle & Reath LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Email: Matthew.Adler@faegredrinker.com
Email: Paul.Riehle@faegredrinker.com

By: /s/ J. Gerard Stranch, IV
    J. Gerard Stranch, IV (BPR 23045)