# EXHIBIT C

| | |
|---|---|
| In re Nissan North America, Inc. Litigation | Case No. 3:19-00843 |
| | District Judge William L. Campbell, Jr. |
| | Magistrate Judge Chip Frensley |

**DEFENDANT NISSAN MOTOR CO., LTD.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Nissan Motor Co., Ltd. ("NML") submits its Objections and Responses to Plaintiffs' First Set of Interrogatories ("Interrogatories") as follows:

**PRELIMINARY STATEMENT AND OBJECTIONS**

1. In responding to these Interrogatories, NML has considered Plaintiffs' definitions solely for the purpose of trying to understand what Plaintiffs are asking about. NML does not necessarily agree that the definitions are accurate or useful for any other purpose. In responding to these Interrogatories, NML is not agreeing with or adopting the definitions regardless of whether it has made additional specific objections to each of the definitions or individual requests.

2. NML objects generally to these Interrogatories to the extent they request information related to vehicles beyond 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano, on the grounds that such discovery requests seek information that is not relevant to the claims in this action, and is not proportional to the needs of the case.

3. NML objects to Plaintiffs' instructions to the extent they seek to impose obligations beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules of

the United States District Court for the Northern District of California, and any other applicable law.

4. NML objects generally to Plaintiffs' proposed time period of "January 1, 2008 to present" for these Interrogatories as it is overbroad in temporal scope, seeks information that is not relevant to the claims in this action, and is not proportional to the needs of the case.

5. NML objects to Plaintiffs' definitions of "Nissan MC," "You," and "Your" because they are so overly broad as to be misleading, are inaccurate factually, and have no real meaning. These responses are made on behalf of Nissan Motor Co., Ltd. only and the phrases "Nissan MC," "You," and "Your" will only be construed as Nissan Motor Co., Ltd. in these responses.

6. NML objects to Plaintiffs' definitions of "Nissan NA" and "Nissan" because they are so overly broad as to be misleading, are inaccurate factually, and have no real meaning. Plaintiffs' Requests were propounded to Nissan Motor Co., Ltd., and these responses are made on behalf of Nissan Motor Co., Ltd. only.

7. NML objects to Plaintiffs' definition of "AEB/FEB Defect" on the grounds that the use of such a phrase is argumentative, assumes a premise that is disputed, and also is so vague, broad and general as to have no real meaning. The definition references symptoms that can be described differently by different people, can have various causes and may have nothing to do with the AEB technology. As a result, every Interrogatory using this phrase is misleading and cannot be fairly answered as phrased.

8. NML's discovery and investigation of the facts relevant to this case are ongoing and NML's responses to these Interrogatories are made to the best of its present knowledge, information, and belief. NML reserves the right to amend and/or supplement its responses,

which are subject to such additional or different information as discovery or further investigation may disclose.

9. In an effort to cooperate with Plaintiffs and their counsel in the discovery process, NML and its counsel agree to confer with Plaintiffs' counsel to resolve any objections noted in these responses, in an effort to better understand what information Plaintiffs believe they may need regarding this case, and if necessary, to better define the scope of discovery.

10. Each of the foregoing general objections is incorporated by reference below in NML's responses to each of Plaintiffs' Interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

What measures, if any, has Nissan employed to guard against the AEB/FEB suddenly and unexpectedly engaging even when no collision is imminent, no obstacles are within striking distance and without need for driver brake application. For any measure identified in your response please set forth with specificity and in detail:

      a. When Nissan identified such hazards;

      b. Nissan's process of designing and implementing any such protective measure;

      c. Any testing of such measures;

      d. When any such protective measure was put into production; and

      e. The specific Nissan vehicles containing such measures.

**RESPONSE TO INTERROGATORY NO. 1:**

NML objects to this Interrogatory, which purports to cover a broad and complex subject in an interrogatory and is therefore overbroad, burdensome, and oppressive. NML further objects to

this Interrogatory because it is argumentative, vague, and assumes a premise that is disputed. Additionally, NML objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the phrases "employed to guard against," "no obstacles are within striking distance," "without need for driver brake application," "Nissan's process of designing and implementing," and "specific Nissan vehicles containing such measures," making it impossible for NML to provide a meaningful response. NML further objects to this Interrogatory on the ground that it seeks information containing and/or reflecting proprietary information, trade secrets, other sensitive or confidential business information.

Subject to and without waiving its objections:

It is difficult to provide more than a general answer to this question, which covers a broad and complex topic related to technology developed over a number of years. The design of vehicles such as the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano and the specialized technology used in Forward Emergency Braking/Automatic Emergency Braking systems designed and developed by suppliers, is the result of years of accumulated knowledge, expertise and experience of many automotive engineers. It would be impractical if not impossible to describe all of this in an answer to an interrogatory.

NML had overall design responsibility for the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano vehicles, including the Automatic Emergency Braking/Forward Emergency Braking systems in those vehicles. The radar for the 2017-2018 Nissan Rogue and 2017-2018 Nissan Rogue Sport was supplied by Continental Automotive GmbH, which was responsible for the detailed design, development and testing of the radar including the object detection and recognition logic. The radar system for the 2018 Nissan Murano was supplied by Bosch Automotive Systems Corporation, which was responsible for the detailed

design, development and testing of the radar, including the object detection and recognition logic.

In response to this interrogatory and Plaintiffs' Requests for Production, and subject to entry of an appropriate protective order, NML will produce Nissan Engineering Manuals ("NEM"), guidelines to engineers on a particular matter that are the result of research, design and development work over a number of years, related to Driver Assistance Systems including Automatic Emergency Braking/Forward Emergency Braking systems. For the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano, NML will also produce design drawings, design notes, and specification tenders, as well as Nissan Design Standards ("NDS") applicable to the Automatic Emergency Braking/Forward Emergency Braking systems.

**INTERROGATORY NO. 2:**

Please set forth in specificity and in detail your process for performance and safety testing (including pre-production and post-production) for the ISST/AEB/FEB, including but not limited to:

      a.    The type and manner of any such test;

      b.    The protocol for any such testing;

      c.    The reasons for such tests;

      d.    Your method for documenting and reporting results; and

      e.    The specific documents evidencing such tests and their results.

**RESPONSE TO INTERROGATORY NO. 2:**

NML objects to this Interrogatory, which purports to cover a broad and complex subject in an interrogatory and is therefore overbroad, burdensome, and oppressive. NML further objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the phrases "process for performance and safety testing," "type and manner," "the reasons for such tests," and "the

protocol for any such testing." NML further objects to this Interrogatory on the ground that it seeks information containing and/or reflecting proprietary information, trade secrets, other sensitive or confidential business information.

Subject to and without waiving its objections:

It is difficult to provide more than a general answer to this question, which covers a broad and complex topic related to technology developed over a number of years. The design of vehicles such as the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano and the specialized technology used in Forward Emergency/Automatic Emergency Braking systems designed and developed by suppliers, is the result of years of accumulated knowledge, expertise and experience of many automotive engineers. It would be impractical if not impossible to describe all of this in an answer to an interrogatory.

NML had overall design responsibility for the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano vehicles and conducted design reviews of the Automatic Emergency Braking/Forward Emergency Braking systems in those vehicles. The radar system for the 2017-2018 Nissan Rogue and 2017-2018 Nissan Rogue Sport was supplied by Continental Automotive GmbH, which was responsible for the detailed design, development and testing of the system that it supplied. The radar system for the 2018 Nissan Murano was supplied by Bosch Automotive Systems Corporation, which was responsible for the detailed design, development and testing of the system that it supplied. Subject to entry of an appropriate protective order, NML will produce the applicable NDS, NEM, and vehicle level engineering test reports for the 2017-2018 Nissan Rogue, 2017-2018 Nissan Rogue Sport, and 2018 Nissan Murano vehicles.

**INTERROGATORY NO. 3:**

Identify all present or former employees of Nissan and/or its corporate affiliates who participated in determining what corrective action, if any, would be taken in response to reports of the alleged AEB/FEB Defect in the AEB-Equipped Vehicles.

**RESPONSE TO INTERROGATORY NO. 3:**

NML objects to this Interrogatory because it is vague, ambiguous, and appears to cover a broad and complex subject. Therefore, it is overbroad, burdensome, and oppressive. NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome in its reference to "corporate affiliates." Additionally, NML objects to this Interrogatory, which seeks information related to the "AEB/FEB Defect," because it is argumentative, vague, and assumes a premise that is disputed. NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" employees.

Subject to and without waiving its objections:

Please see Nissan North America, Inc.'s ("NNA") response to this Interrogatory.

**INTERROGATORY NO. 4:**

Identify all persons who wrote, prepared, compiled and/or maintained any studies, analyses, memoranda and/or databases relating to the alleged AEB/FEB Defect in vehicles equipped with an ISST/AEB/FEB or similar Forward Collision Avoidance System (whether or not such vehicles were manufactured or marketed by Nissan), for or on behalf of a Nissan.

**RESPONSE TO INTERROGATORY NO. 4:**

NML objects to this Interrogatory because it is vague, ambiguous, and appears to cover a broad and complex subject. Therefore, it is overbroad, burdensome, and oppressive. NML objects to this Interrogatory, which seeks information related to the "AEB/FEB Defect," because it is

argumentative, vague, and assumes a premise that is disputed. NML further objects to this Interrogatory on the grounds that it vague and ambiguous in the use of the phrases "compiled and/or maintained any studies, analyses, memoranda and/or databases" and "a Nissan." NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" persons.

Subject to and without waiving its objections:

At this time, the case is in its early stages and various motions challenging Plaintiffs' pleadings are pending. Further, NML's investigation into facts relevant to this case is ongoing. Depending on the ultimate issues deemed relevant to this case, there could be various NML employees with knowledge about issues involved in this case.

To the extent this interrogatory is asking about the groups with design and testing responsibility, the AD/ADAS Advanced Technology Engineering Department (XE0) had design and development responsibility for new Automatic Emergency Braking/Forward Emergency Braking systems, such as the one in the U.S. bound 2017-2018 Nissan Rogue and 2017-2018 Nissan Rogue Sport, up through start of production. The AD/ADAS Engineering Department (XF0) is responsible for application engineering for Automatic Emergency Braking/Forward Emergency Braking systems that have been developed by the Advanced Technology Engineering Department. The AD and ADAS Performance Test Group (XR3) performed vehicle level testing of the Automatic Emergency Braking/Forward Emergency Braking systems.

**INTERROGATORY NO. 5:**

Identify all persons employed by Nissan and/or its corporate affiliates who were, during the period commencing January 1, 2008, to the present, responsible for receiving, recording and/or responding to consumer complaints, dealer contacts, customer hotline complaints,

warranty claims, and approving and evaluating warranty repairs that can reasonably be construed as describing or alleging incidents or events of the alleged AEB/FEB Defect in the AEB-Equipped Vehicles.

**RESPONSE TO INTERROGATORY NO. 5:**

NML objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome in its reference to "corporate affiliates." NML further objects to this Interrogatory, which seeks information related to the "AEB/FEB Defect," because it is argumentative, vague, and assumes a premise that is disputed. NML further objects to this Interrogatory on the ground that it is vague, ambiguous, overbroad, and burdensome in its use of the phrase "responsible for" and to the extent it asks to identify "all" employees. NML further objects to this Interrogatory on the ground that it calls for speculation in its use of the phrase "that can reasonably be construed." NML further objects to this Interrogatory as it is overbroad in temporal scope.

Subject to and without waiving its objections:

NNA is responsible for maintaining warranty data on and handling customer complaints concerning Nissan and Infiniti brand vehicles distributed by it in the United States. NNA is responsible for communicating with its authorized dealers related to those vehicles. Therefore, please see NNA's response to this Interrogatory.

**INTERROGATORY NO. 6:**

Identify all persons employed by Nissan and/or its corporate affiliates who were, during the period commencing January 1, 2008, to the present, responsible for approving and auditing warranty claims.

**RESPONSE TO INTERROGATORY NO. 6:**

NML objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome in its

reference to "corporate affiliates." NML further objects to this Interrogatory on the ground that it is vague, ambiguous, overbroad, and burdensome in its use of the phrase, "approving and auditing warranty claims," "responsible for," and to the extent it asks to identify "all" employees. NML further objects to this Interrogatory as it is overbroad in temporal scope.

Subject to and without waiving its objections:

NNA is responsible for maintaining warranty data on Nissan and Infiniti brand vehicles distributed in the United States. Therefore, please see NNA's response to this Interrogatory.

**INTERROGATORY NO. 7:**

Identify each and every failsafe mechanism, and/or design feature, if any, installed in the vehicles that are equipped with ISST/AEB/FEB in the AEB-Equipped Vehicles.

**RESPONSE TO INTERROGATORY NO. 7:**

NML objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the terms "failsafe mechanism" and "design feature." NML further objects to this Interrogatory on the grounds it is overly broad, seeks information not relevant to the claims or defenses presented in this litigation, and not proportional to the needs of the case. NML further objects to this Interrogatory on the grounds that it so vague and ambiguous that NML cannot determine what information, document, or material is truly sought and therefore cannot provide a meaningful response.

Subject to and without waiving its objections:

Please see NML's response to Interrogatory No. 1.

**INTERROGATORY NO. 8:**

Identify and describe the role of all persons who wrote, prepared, designed, engineered, validated, or tested all design documents and technical specifications related to hardware,

firmware (embedded microcode), and software components in the AEB-Equipped Vehicles, including the following:

   a. wiring diagrams;
   b. circuit board diagrams and/or schematics, showing board layout on each layer of the board;
   c. microcontroller and software that runs the microcontroller;
   d. parts lists;
   e. bills of materials;
   f. functional block diagrams;
   g. design calculations;
   h. design control procedures governing how Nissan manages its design process;
   i. assembly instructions;
   j. manufacturing processes;
   k. post-sale maintenance procedures;
   l. fault-finding manuals;
   m. systems modeling and simulations;
   n. documents showing what kinds of commands are capable of actuating the braking system; and
   o. all applicable source codes.

This Interrogatory covers all iterations from the initial prototype to the final production vehicles and includes all change request histories and the reasons for the proposed changes (whether or not the change was effected).

**RESPONSE TO INTERROGATORY NO. 8:**

NML objects to this Interrogatory because it is vague, ambiguous, compound, and appears to cover a broad and complex subject. Therefore, it is overbroad, burdensome, and oppressive. NML further objects to this Interrogatory on the grounds it is overly broad, seeks information not relevant to the claims or defenses presented in this litigation, and not proportional to the needs of the case. NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" persons. NML further objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the terms or phrases "design documents," "technical specifications," "microcontroller," "functional block diagrams," "design control procedures," "post-sale maintenance procedures," "fault-finding manuals," "systems modeling," and "actuating the braking system." NML further objects to this Interrogatory on the grounds that it so vague and ambiguous that NML cannot determine what information, document, or material is truly sought and therefore cannot provide a meaningful response.

Subject to and without waiving its objections:

Please see NML's response to Interrogatory Nos. 1 and 4.

**INTERROGATORY NO. 9:**

Identify all persons who wrote, prepared, designed and/or engineered the FMEA's (failure mode and effects analyses), fault tree analyses, Ishikawa diagrams, and other failure analyses, (including, but not limited to, inductive, deductive, and brainstorming analyses) relating to the AEB/FEB in the AEB-Equipped Vehicles.

**RESPONSE TO INTERROGATORY NO. 9:**

NML objects to this Interrogatory because it is vague, ambiguous, and appears to cover a broad and complex subject. Therefore, it is overbroad, burdensome, and oppressive. NML further

objects to this Interrogatory on the grounds it is overly broad, seeks information not relevant to the claims or defenses presented in this litigation, and not proportional to the needs of the case. NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" persons. NML further objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the terms and phrases "fault tree analyses," "Ishikawa diagrams," "other failure analyses," and "inductive, deductive, and brainstorming analyses." NML further objects to this Interrogatory to the extent it presumes information and/or documents currently exist, existed in the past, or are generated or maintained in a particular manner.

Subject to and without waiving its objections:

Please see NML's response to Interrogatory Nos. 1 and 4.

**INTERROGATORY NO. 10:**

Identify all present or former employees at Nissan who had responsibility for test schedules, test results and sign-offs with respect to the ISST/AEB/FEB/ACC employed in the AEB-Equipped Vehicles. Include testing done at the component, system and/or vehicle level. Also include testing performed by outside suppliers.

**RESPONSE TO INTERROGATORY NO. 10:**

NML objects to this Interrogatory on the grounds it is overly broad, seeks information not relevant to the claims and defenses raised in this litigation, seeks information in the custody and control of third parties and not accessible to NML, and as not proportional to the needs of the case in its reference to systems other than Automatic Emergency Braking/Forward Emergency Braking systems. NML further objects to this Interrogatory on the ground that it is overbroad and not proportional to the needs of the case as to "test schedules," "test results," and "sign-offs." NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent

it asks to identify "all" employees and in its use of the phrase "had responsibility for."

Subject to and without waiving its objections:

Please see NML's response to Interrogatory No. 2.

**INTERROGATORY NO. 11:**

Identify all present or former employees at Nissan who had responsibility for all TSBs or Dealer Bulletins referring to or discussing the type of ISST/AEB/FEB/ACC installed in the AEB-Equipped Vehicles, including but not limited to TSB NTB15-099b and TSB NTB16-116.

**RESPONSE TO INTERROGATORY NO. 11:**

NML objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" employees and in its use of the phrase "had responsibility for." NML further objects to this Interrogatory as it is overbroad in temporal scope.

Subject to and without waiving its objections:

NNA issues Technical Service Bulletins and Dealer Bulletins to authorized dealers. Therefore, please see NNA's response to this Interrogatory.

**INTERROGATORY NO. 12:**

Identify all persons who wrote, prepared, designed and/or engineered the Factory Service Manual/Factory Shop Manual for the type of ISST/AEB/FEB/ACC installed in the AEB-Equipped Vehicles.

**RESPONSE TO INTERROGATORY NO. 12:**

NML objects to this Interrogatory on the grounds it is vague, ambiguous, overly broad, seeks information not relevant to the claims or defenses presented in this litigation, and is not proportional to the needs of the case. NML further objects to this Interrogatory as vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" persons. NML

further objects to this Interrogatory on the ground that it is vague and ambiguous in its use of the phrase "type of."

Subject to and without waiving its objections:

In general, technical information about the Automatic Emergency Braking/Forward Emergency Braking system to be used in the service manual is provided by the AD/ADAS Engineering Department to the Global Aftersales Engineering Department for preparation of the service manual.

**INTERROGATORY NO. 13:**

Identify all third parties involved in the marketing and advertising of the Class Vehicles, including but not limited to public relations companies, consulting firms, and consumer research companies.

**RESPONSE TO INTERROGATORY NO. 13:**

NML objects to this Interrogatory because it is vague, ambiguous, overbroad, and burdensome to the extent it asks to identify "all" third parties. NML further objects to this Interrogatory as it is overbroad in temporal and geographic scope. NML further objects to this Interrogatory because it seeks information that is not relevant to any party's claim or defense, as Plaintiffs have not identified any advertisement seen or relied upon by Plaintiffs prior to purchasing their vehicles, and, further, the content of any advertising or marketing speaks for itself.

**INTERROGATORY NO. 14:**

Identify by name and dates, all individuals who were members of the Board of Directors for both Nissan NA and Nissan MC.

- 15 -

**RESPONSE TO INTERROGATORY NO. 14:**

NML objects to this Interrogatory as overbroad in temporal scope.

Subject to and without waiving its objections:

Over the last four years, there were no overlapping members of the Boards of Directors for NML and NNA.

Dated: September 30, 2019

*[signature: Matthew J. A.]*

Brigid M. Carpenter (TN BPR 18134)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC
211 Commerce Street, Ste. 800
Nashville, TN 37201
Tel: 615-726-5600
bcarpenter@bakerdonelson.com

E. Paul Cauley, Jr.*
DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: (469) 357-2503
Fax: (469) 327-0860
Paul.Cauley@dbr.com

Paul J. Riehle*
Matthew J. Adler*
DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
Paul.Riehle@dbr.com
Matthew.Adler@dbr.com

*Attorneys for Defendants Nissan North America, Inc. and Nissan Motor Co., Ltd.*
* *pro hac vice* to be sought

# CERTIFICATE OF SERVICE

I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is Drinker Biddle & Reath LLP, Four Embarcadero Center, 27th Floor, San Francisco, California 94111.

On September 30, 2019, I served the foregoing document described as:

**DEFENDANT NISSAN MOTOR CO., LTD.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

on the interested parties in this action as follows:

### SEE SERVICE LIST

- [x] **By electronic service**: by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

- [ ] **By United States mail:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on September 30, 2019, at San Francisco, California.

*Gloria Cadena*
Gloria Cadena

# SERVICE LIST

Case No. 3:19-00843

| | |
|---|---|
| Joel Dashiell Smith<br>Frederick J. Klorczyk, III<br>Lawrence Timothy Fisher<br>**Bursor & Fisher, P.A.**<br>1900 North California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700<br>Email: jsmith@bursor.com<br>    fklorczyk@bursor.com<br>    ltfisher@bursor.com | Benjamin L. Bailey<br>Jonathan David Boggs<br>Michael L. Murphy<br>**Bailey Glasser LLP**<br>209 Capitol Street<br>Charleston, WV 25301-1386<br>Telephone: (304) 345-6555<br>Facsimile: (304) 342-1110<br>Email: bbailey@baileyglasser.com<br>    jboggs@baileyglasser.com<br>    mmurphy@baileyglasser.com |
| Adam J. Levitt<br>John E. Tangren<br>Daniel R. Ferri<br>**Dicello Levitt & Casey LLC**<br>Ten North Dearborn Street, Eleventh Floor<br>Chicago, Illinois 60602<br>Tel: (312) 214-7900<br>alevitt@dlcfirm.com<br>jtangren@dlcfirm.com<br>dferri@dlcfirm.com | H. Clay Barnett, III<br>Wilson Daniel Miles, III<br>**Beasley, Allen, Crow, Methvin, Portis and Miles, P.C.**<br>218 Commerce Street<br>Montgomery, AL 36104<br>Telephone: (334) 269-2343<br>Facsimile: (334) 954-7555<br>Email: clay.barnett@beasleyallen.com<br>    dee.miles@beasleyallen.com |
| Jaimie Mak<br>**Richman Law Group**<br>81 Prospect Street<br>Brooklyn, NY 11201<br>Telephone: (718) 705-4579<br>Facsimile: (718) 228-8522<br>Email: jmak@richmanlawgroup.com | Jeffrey Kaliel, Esq.<br>**Kaliel PLLC**<br>1875 Connecticut Avenue NW, 10th Floor<br>Washington, DC 20009<br>Tel: (202) 350-4783<br>jkaliel@kalielpllc.com |
| Daniel Adam Schlanger<br>**Schlanger Law Group LLP**<br>9 East 40th Street, Suite 130<br>New York, NY 10016<br>Telephone: (212) 500-6114<br>Email: dschlanger@consumerprotection.net | |