# Exhibit 3

Case 3:19-cv-00843   Document 291-3   Filed 12/08/22   Page 1 of 5 PageID #: 6829




E. Paul Cauley, Jr.
Partner
paul.cauley@faegredrinker.com
469-357-2503 direct

Faegre Drinker Biddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, Texas  75201
+1 469 357 2500 main
+1 469 327 0860 fax

March 12, 2021

**VIA ELECTRONIC MAIL**

H. Clay Barnett, III Esq
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
2839 Paces Ferry Road SE, Suite 400
Atlanta, GA  30339
clay.barnett@beasleyallen.com

Re:   *In re: Nissan North America, Inc. Litigation*, No. 3:19-cv-00843 (M.D. Tenn.)

Dear Clay:

I write in response to your February 12 letter and as a follow up to our February 5 meet and confer.  Thank you for your patience on our response.  The storms and ensuing property damage hit Texas the following week which slowed things down here, and some of your requests required outreach through channels to Japan.

To the extent your letter attempts to restate the information provided in our February 4 letter, that correspondence is the best source for our responses.  However, in an attempt to continue to move this process forward, we address below the parts of your February 12 letter not already addressed in our February 4 letter.

**Additional Nissan Productions**

Since our last meet and confer, NML has produced:

(1) Nissan Design Standards, in both Japanese and English, applicable to the AEB system and components.  *See* AEB NML0022554-24346;

(2) Data-Notes, Design Notes, and Spec-Tenders, in both Japanese and English, for the:

   Maxima (2016-2019)
   Pathfinder (2017-2019)
   Altima (2016-2018)

   *See* AEB NML00243347-AEB NML0029221; and

(3) Nissan Design Test Reports applicable to the Maxima, Murano, Pathfinder, Rogue, Rogue Sport, and Sentra (*see* AEB NML0022544-AEB NML0022553).

Additionally, NNA expects to make its third rolling production of custodial ESI responsive to RFP Nos. 86 and 87 today.

### Plaintiffs' Request for Additional NNA Custodians

In December, NNA agreed to Plaintiffs' request to produce custodial ESI for two additional custodians, bringing us to a total of 10 custodians from whom NNA agreed to identify, collect, and produce data responsive to RFP Nos. 86 and 87. Ten custodians is beyond what is proportional to the procedural posture of the case, where the parties are conducting discovery sufficient to permit the filing of Plaintiffs motion for certification. For that reason, we specifically told you that NNA's agreement to produce data from these additional custodians was premised on the understanding that plaintiffs would not ask for more without a good faith basis and showing for said request.

Plaintiffs are now asking for four additional custodians. The documents that you cite in support of adding these custodians do not establish good cause for adding custodians. If anything, they indicate that the custodians from whom we are already producing documents are the key individuals involved with: (1) AEB "test results and test analyses" and (2) root cause analyses and assessments of AEB system activation when there is no object in the travel path (or the system is unavailable due to malfunction of the radar).

In the spirit of compromise, and only if it will resolve the issue, NNA will agree to add Leo Mancini as a custodian. This will bring us to a total of 11 from NNA alone, which again is beyond what is reasonable and proportional. Once you confirm agreement, we will undertake collection, review, and production of Mr. Mancini's custodial file.

### NML Custodians

Identification of NML custodians has been part of our ongoing discovery efforts. As we told you during past meet and confers, that process is more involved, which is why NNA custodial data was rolled our first. NML custodians already part of that collection and review process for AEB testing and root cause analyses include:

| Name | Title | Section Name |
|---|---|---|
| Oomoto, Kazuhiro | Senior Manager | Customer Performance and CAE/Test Engineering Division<br>Customer Performance and Test Engineering Methodology Innovation Department<br>AD/ADAS Test Engineering Development Group |
| Koyama, Takehiro | Senior Manager | Customer Performance and CAE/Test Engineering Division<br>Customer Performance and Vehicle Test Engineering Department No.1<br>AD/ADAS Performance Test Group |

| Name | Title | Section Name |
|---|---|---|
| Aoyanagi Kiwamu | Senior Manager | EE and Systems Engineering Division<br>AD/ADAS and Chassis Control System<br>Engineering Department<br>Project Development Group |
| Yahagi, Satoru | Deputy GM | EE and Systems Engineering Division<br>AD/ADAS Advanced Technology<br>Engineering Department<br>Strategy Group |
| Satou, Ryota | Senior Manager | EE and Systems Engineering Division<br>AD/ADAS Advanced Technology<br>Engineering Department<br>Strategy Group |

We suggest focusing collection and production efforts on these custodians already identified by NML as the most appropriate. Once plaintiffs receive and review their data, if good cause exists to collect and produce data for additional NML custodians, we can discuss at that time.

### Request Nos. 56 and 88

Our discussion related to these requests focused on software upgrades/modifications, the reason/background for the software upgrades; when the upgrades were implemented in production; and when they were implemented in the field. You noted that the project files and Technical Committee reports relevant to service campaigns had NNA Bates Nos. To make sure we are on the same page, our discussion about these productions was nothing new. We previously discussed that the GCARS and GEARS systems are a common platform used by both NML and NNA so the content is the same regardless of which company goes in to those systems and produces the project files. So, since NNA already produced the project files, there is not point to NML producing the same thing.

### English/Japanese Documents

As a general question during our meet and confer (this was not specific to any particular requests), you asked about whether NNA and NML were producing translated documents. We explained that, where documents are available in both Japanese and English, both versions are produced. You will note, for example, that was done for both NEM and NDS documents.

### Request Nos. 21-27

As we discussed on February 5, NNA has already produced all AEB related TSBs for all models of vehicles. To the extent that draft TSBs are included with other responsive and non-privileged categories of documents, Project Files, those drafts have not been excluded because they were drafts. I don't think we discussed whether this was an issue ripe for court prensentment. Rather, we simply confirmed that draft TSBs were not excluded from production by type of document and did not see any rational or proportionate basis for just doing a search for any and all drafts of TSBs without Plaintiff articulating how a search specifically for drafts of TSBs was a reasonable request.

**Request Nos. 10-11**

As you know, we have already produced design documents for the 2016-2019 MY Rogue, 2017-2019 MY Rogue Sport, 2015-2019 MY Murano, 2016-2019 MY Altima, 2016-2019 MY Maxima, 2016-2019 MY Sentra and 2017-2019 MY Pathfinder. This is the same vehicle scope we agreed upon for the warranty data search, and goes beyond the scope of the vehicles owned by the named plaintiffs. In addition, we have also agreed to search for a comparison Infiniti model, just like we did for the warranty data. As discussed during the February 5 call, if after analyzing Nissan's productions plaintiffs have a good faith basis to request a discreet number of vehicle models/years beyond the already agreed upon list, you should send us that request so that we may review and respond accordingly.

Based on your letter, I understand that Plaintiffs are still taking the position that the scope of discovery in this case for design documents should be every Nissan or Infiniti model and model year of vehicle that has ever had an AEB feature. Plaintiffs have made no showing of how such a request is reasonable or proportional.

Sincerely,

E. Paul Cauley, Jr.

EC